**PUBLIC SERVICE COMPANY OF COLORADO, a Colorado corporation, Petitioner,**

v.

**UNITED CABLE TELEVISION OF JEFFCO, INC., Respondent.**

**No. 91SC245.**

Supreme Court of Colorado,
En Banc.

April 13, 1992.

Rehearing Denied May 11, 1992.

Kelly, Stansfield & O'Donnell, Timothy J. Flanagan, Brent L. Backes, James R. McCotter, Denver, for petitioner.

Greengard, Senter, Goldfarb & Rice, William L. Senter, Floyd M. Youngblood, Peter H. Doherty, Denver, for respondent.

Daniel S. Maus, Walter M. Kelly, II, Denver, for amicus curiae US West Communications.

Chief Justice ROVIRA delivered the Opinion of the Court.

This case involves a dispute over the construction of an indemnity provision in an agreement between the petitioner, Public Service Company of Colorado (Public Service), and the respondent, United Cable Television of Jeffco, Inc. (United Cable). The trial court dismissed Public Service's indemnity claim against United Cable. The court of appeals affirmed, holding that an indemnity provision which purports to indemnify against "all claims" is insufficient to require indemnification for the negligence of the indemnitee. *Public Service Co. v. United Cable Television of Jeffco, Inc.*, 816 P.2d 289 (Colo.App.1991). We disagree, and accordingly reverse.

I

In 1982, Public Service entered into a "License for Pole Usage" agreement (agreement) with Community TCI of Colorado, Inc. (TCI), entitling TCI to place its television cables on Public Service's utility poles. The agreement contained a provision requiring TCI to indemnify Public Service "from and against all claims" by third parties for injury or death "connected with or resulting from the exercise by licensee of the rights granted" under the agreement. With Public Service's permission, TCI subsequently assigned its interest under the agreement to its successor, United Cable.

In 1984, United Cable hired Montgomery Line Construction Company (Montgomery) to remove television cables attached to Public Service's utility poles. Lawrence Rose, an employee of Montgomery, was injured when the utility pole on which he was standing broke while he was removing television cables. Rose brought an action against Public Service claiming that his injuries were caused by Public Service's negligence in inspecting and maintaining its utility pole. Public Service argued at trial that Rose's injuries were a direct result of Rose's unsafe practices when removing television cables, and not a result of the maintenance and inspection of its utility poles.[1] The jury returned a verdict

1. Public Service had entered into a contract with Osmose Wood Preserving, Inc. to maintain

for Rose, attributing 85 percent negligence to Public Service and 15 percent negligence to Rose. The award was accordingly reduced by 15 percent.

During the *Rose* litigation, Public Service made no demand against United Cable for indemnification pursuant to the agreement. Six days after the trial, Public Service notified TCI that it was seeking indemnity under the agreement for the amount of the *Rose* judgment plus attorneys fees.[2] Receiving no response to the indemnity demand, Public Service settled with Rose and paid the claim. Public Service then brought this action against United Cable.

The trial court dismissed the indemnity claim finding that Public Service could not recover for its own negligence under the indemnity provision. The court of appeals affirmed, holding that the contractual language was too broad to evidence a clear and unambiguous intent by the parties that Public Service recover indemnification for its own negligence.[3] Judge Sternberg dissented, concluding that the language in the indemnity provision "unambiguously succeeds in holding Public Service Company harmless from all claims—including those arising from its own alleged negligence." *United Cable*, 816 P.2d at 297 (Sternberg,

C.J., dissenting). We granted certiorari to determine whether the court of appeals erred in its determination that the plain meaning of an indemnity provision in a commercial agreement should not be enforced because it did not specifically include the negligent conduct of the indemnitee.

## II

■ The indemnity provision in the agreement reads as follows:

> Licensee shall indemnify and save and hold harmless Electric Company [Public Service] and third parties using Electric Company poles from and against *all claims, liabilities, causes of action, or other legal proceedings* by third parties for damage to property, violation of occupancy agreements or conditions, or injury or death of any person or persons *in any way arising out of, connected with or resulting from the exercise by Licensee of the rights granted to it* hereunder, the existence or operation of Licensee's facilities and any other use of Electric Company's poles or facilities by Licensee, its employees, agents or contractors, including, but not limited to, any claims by

and inspect Public Service's poles. In a later action by Public Service against Osmose, the trial court found Osmose was not negligent and that the accident was not connected with the work performed by Osmose. The trial court did not apply the doctrine of collateral estoppel based on the *Rose* litigation due to the absence of a special verdict form reflecting the basis of the jury's verdict in *Rose*. The court of appeals reversed, finding that the trial court erred in its narrow application of the doctrine of collateral estoppel, and remanded to the trial court for reconsideration of the collateral estoppel issue. *Public Service Co. v. Osmose Wood Preserving, Inc.*, 813 P.2d 785 (Colo.App.), *cert. denied*, No. 91SC141 (Colo. July 29, 1991).

2. Before it filed this lawsuit, Public Service sought indemnification only from TCI, a defunct entity, and not from United Cable.

3. The trial court also found that Public Service was bound by the jury's finding of negligence in the *Rose* case, and that although Public Service could have obtained indemnity for Rose's negligence, it had waived all rights to indemnity under the contract by failing to notify United Cable of the pending *Rose* litigation. The court of appeals reversed on these issues, finding that

while Public Service was bound by the jury's determination of Rose's negligence, Public Service was not collaterally estopped from litigating the percentage of negligence attributable to United Cable or other parties. The prohibition on indemnity applied only to the negligent conduct of Public Service. Thus, United Cable was still liable to indemnify Public Service for the negligent acts of United Cable, as well as the negligent acts of parties other than Rose or Public Service. The court of appeals further found that because there was a contractual provision requiring notice to United Cable to trigger an obligation to defend against claims, Public Service's failure to give notice of the Rose litigation resulted in a waiver of a right to a defense from United Cable. However, because there was no contractual provision stating that United Cable had a "right" of defense, United Cable had no right to control the lawsuit. Therefore, Public Service's failure to notify United Cable of the *Rose* litigation resulted only in a waiver of its right to obtain a defense from United Cable, but did not result in a forfeit of all rights to indemnity under the contract. *United Cable*, 816 P.2d at 295–96.

Licensee's subscribers for lack of or interruption of service. Indemnity shall include Licensee's obligation to defend any and all such actions, claims or other legal proceedings and to reimburse Electric Company and third parties using Electric Company poles for all expenses, including attorney fees, incurred in connection therewith.

(Emphasis added.) Public Service asserts that the language in the agreement clearly and unambiguously expresses the intent of the parties to protect Public Service from all legal liabilities incurred due to the utility pole usage rights granted to United Cable. Public Service further contends that the rule of strict construction of indemnity agreements should not apply under the facts and circumstances surrounding this case, because the agreement was entered into in a commercial context following arms-length negotiations between two sophisticated corporations.

United Cable argues that the indemnity agreement is insufficient to sustain a duty to indemnify Public Service for its own negligence because Colorado case law requires clear and unequivocal language that indemnification is expected for the indemnitee's own negligent conduct.

Neither party argues that agreements indemnifying the indemnitee against loss caused by its own negligence are invalid. The dispute arises over whether the language in this agreement is sufficient to require indemnification for Public Service's own negligence.

While indemnity contracts are generally construed to effectuate the parties' intentions, under the rule of strict construction, "indemnity contracts holding indemnitees harmless for their own negligent acts must contain clear and unequivocal language to that effect." *Williams v. White Mountain Constr. Co.*, 749 P.2d 423, 426 (Colo. 1988).

The indemnity provision begins by requiring United Cable to "indemnify and save and hold harmless" Public Service from and against all claims and liabilities in any way arising out of the rights granted

United Cable. While the provision does not specifically mention the effect of any negligence on the part of Public Service, the language covers "all claims, liabilities, causes of action, or other legal proceedings." This indicates an intent to include claims arising from Public Service's negligence. The use of the word "liabilities" is significant because it covers those instances where Public Service is legally liable for damages, including those where liability arises because of its own negligence. *Freund v. Utah Power & Light Co.*, 793 P.2d 362, 371 (Utah 1990).

The indemnity provision also includes the language, "in any way arising out of, connected with or resulting from the exercise" by United Cable of the rights granted to it. The breadth of the language "in any way" supports an interpretation that the parties intended that Public Service be indemnified for its own negligence.

The second sentence of the indemnity provision requires United Cable to "defend any and all such actions, claims or other legal proceedings" against Public Service incurred in connection with its rights under the indemnity provision. This language, requiring indemnification for costs of defense, further strengthens an interpretation that the parties intended to indemnify Public Service from all risks and costs, including those arising from its own negligence. The obvious purpose of the indemnity provision is to allocate to United Cable the entire burden of additional risk stemming from the rights granted United Cable. If the language in the provision is not interpreted to include instances in which Public Service is negligent, the risks arising from United Cable's rights under the agreement would not be fully allocated to United Cable, as intended by the parties.

In *United States v. Seckinger*, 397 U.S. 203, 211, 90 S.Ct. 880, 885, 25 L.Ed.2d 224 (1970), the Court stated that "a contractual provision should not be construed to permit an indemnitee to recover for his own negligence unless the court is firmly convinced that such an interpretation reflects the in-

tention of the parties."[4] Under the circumstances here, we are convinced that this indemnity provision reflects an intent to hold Public Service harmless for all claims, including claims arising from its own negligence.[5]

■ We do not find that the failure to specifically refer to the negligent conduct of the indemnitee in the agreement renders an otherwise unambiguous indemnity provision insufficient to indemnify the indemnitee from its own negligence. In *Heil Valley Ranch, Inc. v. Simkin,* 784 P.2d 781 (Colo.1989), the plaintiff, a horseback rider, sustained injuries in a fall from her rented horse. Prior to riding the horse, she signed a release agreement waiving any claims she might have against Heil Valley Ranch as a result of physical injury incurred while riding. Holding the release agreement valid, we found that use of the word "negligence" was not always required for an agreement to shield a party from claims based on negligence. *Id.* at 785. Following the rule of strict construction, we stated that the "inquiry should be whether the intent of the parties was to extinguish liability and whether this intent was clearly and unambiguously expressed." *Id.* Indemnity agreements, like release agreements, should be upheld as long as the language clearly and unambiguously expresses the intent of the parties.

The trial court and the court of appeals relied on *Williams v. White Mountain Constr. Co.,* 749 P.2d 423 (Colo.1988), to support their conclusion that the indemnification provision was insufficient to indemnify Public Service from its own negligence. In *Williams,* a subcontractor was digging a trench according to the directions of the contractor's superintendent. The subcontractor advised the superintendent of the hazards of digging a trench in the manner directed, and the superintendent replied, "Don't worry about it—we will take care of it if anything happens." *Id.* at 425. The claim for indemnification was based on this oral statement. The court ruled that no indemnity contract had been formed because of the absence of clear and unequivocal language sufficient to hold the indemnitee harmless for its own negligence. *Id.* at 426.

The situation here is substantially different from *Williams.* In *Williams,* the court's decision was based on an oral statement made on the spur of the moment. The contract here was in writing, and was the result of arms-length negotiations between two sophisticated corporations. The *Williams* decision is not persuasive under the facts and circumstances found here.

■ We recognize the general rule that indemnity agreements which purport to indemnify for the negligent conduct of an indemnitee must be strictly construed, but find that under certain circumstances, broad language is sufficient to meet this rule of strict construction. We are not alone in finding broad, all-inclusive lan-

---

4. In *United States v. Seckinger,* the indemnity clause stated that the private contractor, Seckinger, "shall be responsible for all damages to persons or property that occur *as a result of his fault or negligence* ...." *Seckinger* at 203, 90 S.Ct. at 881. (emphasis added). The Court held that Seckinger was not required to indemnify the government for the government's own negligence. This case is distinguishable because the indemnity clause specifically refers to Seckinger's negligence and does not mention the government's negligence. Furthermore, the Court based its decision in part on the government's "vast economic resources and stronger bargaining position," *id.* at 216, 90 S.Ct. at 888, which is not a factor in the case at hand.

5. Further supporting the parties intent to indemnify Public Service for all claims, including

its own negligence, is the provision in the agreement immediately following the indemnity section. This provision requires United Cable to comply with the Colorado Workers' Compensation Insurance program and further requires United Cable to carry general property damage insurance and general liability insurance. General liability insurance is required "for injury or death of persons not less than $500,000.00 as to any one person and $1,000,000.00 as to any one occurrence." Through the purchase of insurance, United Cable could insure the risk of loss from its obligations under the indemnity agreement. This further supports the intent of the parties to allocate the economic burden to United Cable for injuries resulting from its rights under the agreement.

guage sufficient to express the parties' intent when indemnity contracts are entered into in a commercial context. There is a growing trend to relax the rule of strict construction in construing indemnity contracts in commercial settings. In *Glaspell v. Ohio Edison Co.*, 29 Ohio St.3d 44, 505 N.E.2d 264 (Ohio 1987), as here, there was a dispute over an indemnity agreement between a utility company and a cable television company. The court declined to apply the rule of strict construction because the "burden of indemnification was assented to in a context of free and understanding negotiation." *Id.* 505 N.E.2d at 266. In *Freund v. Utah Power & Light Co.*, 793 P.2d 362 (Utah 1990), the court applied strict construction, but evaluated the indemnity agreement according to the parties' objectives and the surrounding facts and circumstances. *Id.* at 370. The agreement was similar to the agreement at issue here, requiring the licensee to "indemnify, protect, and save harmless Licensor from and against any and all claims, demands, causes of action, costs or other liabilities...." *Id.* at 371 (emphasis deleted). The court found it unnecessary that the agreement refer expressly to negligence, and held that the indemnitee-licensor was entitled to indemnity. *Id.* See *C.J.M. Constr., Inc. v. Chandler Plumbing & Heating, Inc.*, 708 P.2d 60, 64 (Alaska 1985) (applying a "reasonable construction of indemnity clauses" to a broad, inclusive indemnity contract, finding it no longer necessary that an indemnity clause contain words specifying indemnity for the indemnitee's own negligence); *Bartlett v. Davis Corp.*, 219 Kan. 148, 547 P.2d 800, 808 (1976) (following the rule of strict construction, but finding it unnecessary that the indemnity agreement contain specific or express language covering the indemnitee's negligence); *Niagara Frontier Transp. Auth. v. Tri-Delta Constr. Corp.*, 107 A.D.2d 450, 487 N.Y.S.2d 428, 430, *aff'd*, 65 N.Y.2d 1038, 494 N.Y.S.2d 695, 484 N.E.2d 1047 (1985) (finding the rule of strict construction of indemnification agreements somewhat liberalized where

the agreement was negotiated at arms-length between sophisticated business entities, the intent being to allocate the risk of liability to third parties between themselves essentially through the employment of insurance); *Simons v. Tri-State Constr. Co.*, 655 P.2d 703, 708 (Wash.App. 1982) (clauses purporting to indemnify a party for its own negligence are strictly construed, but must be viewed realistically to recognize the intent of the parties to allocate the cost of expense of certain risks between themselves).

The trend to relax the rule of strict construction appears to be attributable to the increasing use of liability insurance. *Pickhover v. Smith's Management Corp.*, 771 P.2d 664, 667 (Utah App.1989), *cert. denied, Pickhover v. Young Elec.*, 795 P.2d 1138 (Utah 1990). The increasing prevalence of such contracts, as well as the absence of any disparity of bargaining power, provides further support for the relaxation of the rule of strict construction. We see no reason why commercial contracts, entered into by two sophisticated parties following full negotiation, should be construed in a manner which frustrates the obvious intent of the parties.

We find that the parties' intent to protect Public Service from any liability because of the rights given to United Cable is clearly and unambiguously expressed in the agreement. Accordingly, we reverse the judgment and return this case to the court of appeals with directions to remand to the trial court for further proceedings in accordance with the views expressed herein.