**BOULDER PLAZA RESIDENTIAL, LLC,**
a Colorado limited liability company,
Plaintiff–Appellant,

v.

**SUMMIT FLOORING, LLC, a Colorado**
limited liability company,
Defendant–Appellee.

No. 06CA1269.

Colorado Court of Appeals,
Div. V.

April 17, 2008.

Rehearing Denied May 15, 2008.

Berg, Hill, Greenleaf, & Ruscitti, LLP, George V. Berg, Jr., Heidi C. Potter, Judy B. Snyder, Boulder, Colorado, for Plaintiff–Appellant.

The Hustead Law Firm, P.C., Patrick Q. Hustead, Melissa W. Shisler, Michael S. Power, Denver, Colorado, for Defendant–Appellee.

Opinion by Judge J. JONES.

Plaintiff, Boulder Plaza Residential, LLC (BPR), appeals the district court's judgment in favor of defendant, Summit Flooring, LLC (Summit), on BPR's contractual indemnity claim. We affirm, and remand the case for further proceedings.

## I. Background

In 2000, BPR contracted with McCrerey & Roberts Construction Company, Inc. (McCrerey) for McCrerey to act as the general contractor on a residential condominium construction project known as One Boulder Plaza (the project). McCrerey subsequently entered into a subcontract with Summit for Summit to install hardwood floors in the project's residential units. The subcontract outlined the scope of Summit's obligations, and, as relevant here, included various indemnity and insurance provisions.

Shortly after Summit completed the installation of the hardwood floors, BPR's representatives noticed some cupping, disbanding, panelizing, and splitting of the floor boards. BPR notified McCrerey of the alleged defects, and McCrerey then contacted Summit. McCrerey and Summit attempted to repair the floors, but were largely unsuccessful.

On August 30, 2004, BPR filed a lawsuit against McCrerey, McCrerey's principal, Summit, and Summit's principal, asserting numerous causes of action arising from the alleged defective installation of the hardwood floors. Summit filed a counterclaim against BPR for payment under the subcontract, and a similar cross-claim against McCrerey. McCrerey filed cross-claims against Summit

on a variety of theories, and a counterclaim against BPR for payment under the contract.

On September 30, 2005, One Boulder Plaza Management Company, the entity responsible for managing the project's residential units, acting as an agent for 1301 Canyon Condominium Association (the homeowners association), filed a separate lawsuit against BPR, McCrerey, McCrerey's owner, Summit, and Summit's owner seeking compensation for the same alleged defects in the hardwood floors. The homeowners association was subsequently substituted as the plaintiff. Because the second lawsuit involved essentially the same claims as the suit brought by BPR, the court consolidated the two cases.

Prior to trial, McCrerey and McCrerey's owner settled with BPR, on its own behalf and as assignee of the claims of the homeowners association. In return for a release from BPR, McCrerey agreed to pay BPR $800,000 in cash, release all other claims against BPR relating to this litigation, and assign all of its claims against Summit, Summit's owner, and Summit's liability insurance carrier to BPR.

The case was tried to a jury on three claims by BPR, namely, common law indemnity, contractual indemnity, and breach of contract; Summit's counterclaim against BPR for breach of contract; and Summit's cross-claim against McCrerey for breach of contract. The court instructed the jury that in order to find in BPR's favor on BPR's indemnity claims it would have to find, among other things, that Summit was negligent or breached the subcontract. The jury found that Summit was not negligent and did not breach the subcontract, and accordingly found in Summit's favor on all of BPR's claims. The jury found in BPR's favor on Summit's counterclaim, but found in Summit's favor on its cross-claim against McCrerey.

On appeal, BPR challenges only the judgment against it on its contractual indemnity claim.

## II. Discussion

BPR's sole contention on appeal is that the district court erred in interpreting the sub-contract to require a showing of fault—either negligence or breach of contract—by Summit to trigger Summit's contractual obligation to indemnify McCrerey, and in so instructing the jury. We are not persuaded.

### A. Preservation of Issue for Appeal

■ Summit argues that BPR's appeal should be dismissed because it failed to preserve its objection to the jury instructions in the district court, and because BPR invited any error in those instructions. We disagree.

During trial, the district court heard arguments on BPR's contention that Summit had a contractual obligation to indemnify McCrerey (BPR's assignor) regardless of whether Summit was at fault. The court refrained from ruling on that issue at the time, and indicated it would do so after the jury rendered its verdict. The court then suggested that the parties prepare instructions and verdict forms for BPR's contractual indemnity claim incorporating all questions that could potentially be asked of the jury, encompassing both BPR's and Summit's theories. That way, the court explained, if it ultimately ruled that a finding of fault is required, the issue of fault would have been determined by the jury, obviating the need for further proceedings. The parties' counsel agreed to that suggestion. BPR's counsel prepared instructions that included fault by Summit (either negligence or breach of contract) as an element of the contractual indemnity claim.

Before the jury began deliberations, the court ruled against BPR and in favor of Summit on the interpretation of the contractual indemnity provisions, concluding that BPR was required to show fault on Summit's part. BPR's counsel then participated with Summit's counsel and the court in preparing verdict forms consistent with the court's ruling.

Summit argues essentially that BPR's compliance with the court's directions and ruling resulted in a failure to preserve its objection to the instructions and verdict forms. We do not agree.

In submitting the draft instructions and verdict form, BPR did not concede that Summit's fault was an element of the contractual indemnity claim, nor did it thereby abandon its argument that Summit's fault was not required to impose liability under the indemnity provisions of the subcontract. BPR consistently maintained its position throughout the trial, and only presented instructions and a verdict form contrary to its position in response to a specific request by the court and the court's ruling on the legal issue. The court's initial decision to defer ruling on the meaning of the indemnity provisions of the subcontract until after the jury rendered its verdict left BPR with little choice but to craft its proposed instructions in the manner it did. Likewise, once the court ruled against BPR on the issue (before the jury began deliberations), BPR had little choice but to participate in crafting verdict forms consistent with the court's ruling. Accordingly, we conclude BPR preserved its claim of error and did not invite the alleged error. *See Vista Resorts, Inc. v. Goodyear Tire & Rubber Co.*, 117 P.3d 60, 65 (Colo.App.2004) ("The invited error doctrine prevents a party from inducing an erroneous ruling and then seeking to benefit by appealing that error.").

### B. Interpretation of the Subcontract

 The subcontract between Summit and McCrerey included three separate provisions containing indemnity language. Those three provisions read as follows:

Subcontractor agrees to the following:

1. To furnish certificates of Workers' Compensation coverage as required by law, public liability and property damage insurance for all operations pertaining to this contract, and auto liability [sic] immediately upon signing the contract, in minimum amounts of $1,000,000 bodily injury and liability and $1,000,000 property damage liability, and agrees to indemnify and save contractor harmless against all claims for damage to persons and property growing out of the execution of the work, including any costs and fees incurred by Contractor, should any claims be made. Said insurance shall be evidenced by certification filed with the Contractor. Said

insurance policy shall name McCrerey & Roberts Construction Co., Inc. as a certificate holder. See Insurance Requirements. The subcontractor agrees to adhere to all OSHA requirements for health, safety and hazardous waste disposal, and to provide scaffolding and fall protection for its' [sic] portion of the work on the project.

. . . .

13. To protect and indemnify Contractor against any loss or damage suffered by anyone arising through the negligence of Subcontractor, or those employed by it or its agent or servants; to bear any expense which Contractor may have by reason of the negligence, or on account of being charged with negligence; and if there are any injuries to persons or property unsettled, when the work is finished, final settlement between Contractor and Subcontractor shall be deferred until such claims are adjusted or suitable special indemnity acceptable to Contractor is provided by Subcontractor.

14. To indemnify and hold Owner and Contractor harmless from any and all loss or damage which Owner and Contractor, or either of them, may sustain on account of any claim, demand or suit made or brought against Owner and/or Contractor by or on behalf of any employee of Subcontractor, or by or on behalf of any person injured by Subcontractor, its servants, agents or employees.

The district court concluded that provision 14 applies only to personal injury claims, and that provision 13 trumps provision 1's general indemnity language because it is more specific. Therefore, the court found provision 13 governs BPR's contractual indemnity claim, and it requires a finding of negligence or breach of contract on the part of Summit to impose liability.

The construction of a contract is a question of law for the court. *B & B Livery, Inc. v. Riehl*, 960 P.2d 134, 136 (Colo.1998); *Radiology Professional Corp. v. Trinidad Area Health Ass'n, Inc.*, 195 Colo. 253, 256, 577 P.2d 748, 750 (1978). Accordingly, "the standard of review for the interpretation of contract terms is de novo." *Edge Telecom, Inc.*

*v. Sterling Bank,* 143 P.3d 1155, 1159 (Colo. App.2006).

 "An indemnity agreement is subject to the same rules of construction that govern contracts generally." *Mid Century Ins. Co. v. Gates Rubber Co.,* 43 P.3d 737, 739 (Colo.App.2002). "It is axiomatic that a contract must be construed to ascertain and effectuate the intent of the parties as determined primarily from the language of the contract." *East Ridge of Fort Collins, LLC v. Larimer & Weld Irrigation Co.,* 109 P.3d 969, 974 (Colo.2005). "A contract is to be interpreted in its entirety to harmonize and to give effect to all provisions, if possible." *Mid Century,* 43 P.3d at 739; *see also Kuta v. Joint Dist. No. 50(J),* 799 P.2d 379, 382 (Colo.1990) (clauses and phrases should not be viewed in isolation); *May Dep't Stores Co. v. University Hills, Inc.,* 824 P.2d 100, 101 (Colo.App.1991). In so doing, we accord the words and phrases in the contract their plain and ordinary meanings. *East Ridge,* 109 P.3d at 974; *Mid Century,* 43 P.3d at 739.

BPR argues that provision 1 clearly provides that Summit must indemnify it for all claims "growing out of the execution of the work," a phrase which BPR contends means relating in any way to the hardwood floors. According to BPR, Summit's obligation exists regardless whether Summit is at fault and even where BPR is at fault, and arises when it notifies Summit of any alleged problem with the hardwood floors. BPR further contends that provisions 13 and 14 are merely "belt and suspender" provisions intended to buttress the all-encompassing indemnity provision (provision 1). We are not persuaded.

Under BPR's proposed construction of provisions 1, 13, and 14, the latter two are rendered meaningless. In our view, however, the provisions can be harmonized so as to give meaning to all three.

We agree with the district court that provision 14 applies only to personal injury claims. Provision 14 states that Summit shall "indemnify and hold Owner and Contractor harmless" from damages sustained "on account of any claim, demand or suit" "brought against Owner and/or Contractor" by (1) "any employee of subcontractor," or (2) "by any *person injured* by Subcontractor, its ser-

vants, agents, or employees." (Emphasis added.) The unambiguous language of this provision indicates a clear intent by the parties that Summit indemnify McCrerey for any personal injury claims brought against it by specified persons. BPR does not assert that this case arises out of any such injury or claim, and therefore provision 14 is inapplicable.

The interpretation of provisions 1 and 13 presents a somewhat closer question. We conclude, however, that it is possible to reconcile those provisions so as not to render provision 13 meaningless.

 The rule of strict construction has been applied in interpreting indemnity agreements that are alleged to require the indemnitor to indemnify the indemnitee for the indemnitee's own negligent conduct—that is, in situations in which the indemnitor is not at fault. Under that rule, " 'indemnity contracts holding indemnitees harmless for their own negligent acts must contain clear and unequivocal language to that effect.' " *Public Service Co. v. United Cable Television of Jeffco, Inc.,* 829 P.2d 1280, 1283 (Colo.1992) (quoting *Williams v. White Mountain Constr. Co.,* 749 P.2d 423, 426 (Colo.1988)). However, the supreme court has recognized "a growing trend to relax the rule of strict construction in construing indemnity contracts in commercial settings." *Id.* at 1285.

 In *Public Service Co.,* the court held that a "failure to specifically refer to the negligent conduct of the indemnitee in the agreement" does not render "an otherwise unambiguous indemnity provision insufficient to indemnify the indemnitee from its own negligence." *Id.* at 1284. But, it remains the rule that " 'a contractual provision should not be construed to permit an indemnitee to recover for his own negligence unless the court is firmly convinced that such an interpretation reflects the intention of the parties.' " *Id.* at 1283–84 (quoting *United States v. Seckinger,* 397 U.S. 203, 211, 90 S.Ct. 880, 25 L.Ed.2d 224 (1970)).

Provision 1 requires Summit to indemnify McCrerey "against all claims for damage to persons and property *growing out of the*

*execution of the work . . . .* " (Emphasis added.) The California Court of Appeals has addressed almost identical language, and has held that it is insufficiently specific to "evidence a mutual understanding of the parties that the subcontractor would indemnify [the contractor] even if its work was not negligent." *Heppler v. J.M. Peters Co., Inc.*, 73 Cal.App.4th 1265, 87 Cal.Rptr.2d 497, 509 (1999) (declining to extend indemnity provision to cover indemnitee's negligence because the provision required indemnification by subcontractor for "damages to persons or to property growing out of the execution of the work").

We agree. The phrase "growing out of the execution of the work" in provision 1 implicates the manner in which Summit performs the work under the subcontract. This interpretation is supported by provision 13, by which Summit agrees to indemnify McCrerey for any damages suffered "arising through the negligence of subcontractor." These two provisions, when read together, further indicate that Summit's indemnity obligation is limited to damages arising only from its own negligent acts, breach of contract, or intentional torts.

BPR's reliance on *Public Service Co.* is misplaced. There are significant distinctions between the indemnity provision at issue in *Public Service Co.* and those at issue in this case.

First, the provision at issue in *Public Service Co.* required the licensee, United Cable, to indemnify the licensor, Public Service Company, for "all claims, liabilities, causes of action, or other legal proceedings." *Public Service Co.*, 829 P.2d at 1283. The court specifically found the use of the word "liabilities" to be "significant because it covers those instances where Public Service is legally liable for damages, including those where liability arises because of its own negligence." *Id.* The subcontract between Summit and McCrerey does not contain any such language.

Second, the provision at issue in *Public Service Co.* included broad language describing United Cable's indemnity obligations as including damages "in any way arising out of, connected with or resulting from the exer-

cise" of United Cable's rights under the contract. *Id.* The court emphasized the breadth of the phrase "in any way" to support its interpretation "that the parties intended that Public Service Company be indemnified for its own negligence." *Id.* Again, the subcontract between Summit and McCrerey does not contain such language, and, as noted above, we perceive a distinction between such language and the phrase "growing out of the execution of the work" in provision 1, particularly given the presence of provision 13.

■ BPR also argues that we should look to the insurance coverage Summit carried pursuant to the subcontract, which, BPR suggests, shows the parties' intent that Summit would indemnify McCrerey for damages regardless of fault. The insurance policy, however, was not admitted into evidence at trial, and was not submitted to the court before it ruled on the legal issue now before us. We decline to consider evidence or information presented to the district court after the ruling from which the losing party appeals. *Cf. Yeager v. Clark*, 14 Colo.App. 40, 42, 59 P. 62, 63 (1899) (evidence not introduced at trial will not be considered on appeal); *Schmidt v. Frankewich*, 819 P.2d 1074, 1078 (Colo.App.1991) (appellate court would not consider evidence presented in motion for reconsideration of summary judgment). The single reference to Summit's insurance in the testimony of McCrerey's owner, to which BPR cites, is too vague to bear on the interpretation of the subcontract and the limited portions of the insurance policy quoted in an exhibit admitted into evidence at trial are hearsay and devoid of context. Though BPR submitted the policy to the court with its Rule 59 motion, BPR has not appealed from the denial of that motion.

In any event, evidence of the scope of Summit's insurance coverage is of dubious value, and certainly does not compel the result urged by BPR. A subcontractor may have reasons independent of indemnity concerns to obtain broader coverage than the subcontract may require.

■ Because BPR is not the prevailing party on appeal, we deny its request for attorney fees and costs. Summit is the prevailing party in this appeal, and accordingly it is entitled to an award of its reasonable attorney fees and costs under the prevailing party provision of the subcontract. *See Boulder Plaza Residential, LLC v. Summit Flooring, LLC,* 198 P.3d 1215 (Colo.App. 2008). We exercise our discretion pursuant to C.A.R. 39.5 and remand the case to the district court for a determination of the amount of Summit's reasonable attorney fees and costs incurred on appeal.

The judgment is affirmed, and the case is remanded for an award of fees and costs consistent with this opinion.

Judge ROY and Judge GRAHAM concur.