24CA1736 Commonwealth v Northcreek 02-26-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1736
El Paso County District Court No. 21CV31277
Honorable Gregory R. Werner, Judge

---

Commonwealth Land Title Insurance Company,

Plaintiff-Appellee,

and

Alturas Real Estate Fund, LLC, a Delaware limited liability company,

Third-Party Defendant-Appellee,

v.

Northcreek Complex, LLC, a Delaware limited liability company, Northcreek Complex Fund, LLC, a Delaware limited liability company, and Younan Properties, Inc., a California corporation,

Defendants and Third-Party Plaintiffs-Appellants.

---

JUDGMENT AFFIRMED IN PART
AND REVERSED IN PART

Division VII
Opinion by JUDGE GOMEZ
Pawar and Johnson, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 26, 2026

---

Van Remortel LLC, Fred Van Remortel, Littleton, Colorado, for Plaintiff-Appellee and Third-Party Defendant-Appellee

Brownstein Hyatt Farber Schreck, LLP, Justin L. Cohen, Bridget C. DuPey, Reilly E. Meyer, Denver, Colorado; Brownstein Hyatt Farber Schreck, LLP, Eric

D. Walther, Las Vegas, Nevada, for Defendants and Third-Party Plaintiffs-Appellants

¶ 1 Defendants and third-party plaintiffs, Northcreek Complex, LLC (Northcreek); Northcreek Complex Fund, LLC (Northcreek Fund); and Younan Properties, Inc. (Younan Properties) (collectively, appellants), appeal the trial court's entry of judgment in favor of plaintiff, Commonwealth Land Title Insurance Company (Commonwealth), and third-party defendant, Alturas Real Estate Fund, LLC (Alturas), after a bench trial. Appellants contend that the court erred by (1) reforming a special warranty deed conveying three commercial properties; (2) finding in Commonwealth's favor on its misrepresentation claim; (3) entering judgment against Northcreek Fund and Younan Properties on that claim; and (4) rejecting their third-party breach of contract claim against Alturas. We agree with the third contention but reject the other three. Therefore, we reverse the judgment entered against Northcreek Fund and Younan Properties on the misrepresentation claim, but we affirm the judgment in all other aspects.

## I. Background

¶ 2 This case arises out of a real estate transaction in which Alturas purchased three commercial properties from Northcreek. The transaction involved arm's-length negotiations between

1

sophisticated properties that were represented by counsel. Although the parties raised a lot of issues in this case, it largely hinged on one central question: who was responsible for the real estate taxes that accrued on the properties in 2020?

¶ 3     The facts of the case were largely undisputed at trial.

¶ 4     In mid-2020, Alturas expressed interest in purchasing three commercial properties owned by Northcreek.  After a few months of negotiations, Northcreek and Alturas entered into a purchase and sale agreement in October 2020.  But issues came up, and the parties terminated the agreement in November of that year, resumed negotiations the following month, and ultimately reinstated the agreement with two amendments at the end of 2020 and the beginning of 2021.  The transaction finally closed on January 29, 2021.

¶ 5     The relevant language of the purchase and sale agreement was included in the October 2020 agreement and wasn't altered by the later amendments.  Section 5.5 of the agreement provides, in part,

> Real estate taxes shall be prorated between [Northcreek] and [Alturas] based upon the actual days of ownership of the parties *for the year in which [c]losing occurs* utilizing the most

2

recent ascertainable tax bill(s) and such
proration shall be final.

(Emphasis added.)

¶ 6     The draft special warranty deed attached as an exhibit to the

October 2020 agreement stated that the conveyance was subject to

"[a]ny lien to secure payment of real estate taxes, including . . .

taxes and assessments by any taxing authority for the year 2020

and subsequent years."  That language was never changed, so it

appears in the special warranty deed that Northcreek executed on

January 29, 2021 and Alturas thereafter recorded.

¶ 7     In early January 2021, Northcreek received the 2020 real

estate tax bills for the properties, which totaled $390,273.50.  The

payments on the 2020 real estate taxes weren't due until, at the

earliest, March 2021.  Before the closing, Alturas was given access

to the tax bills, as well as the publicly available tax certificates,

which showed that the 2020 taxes hadn't yet been paid.

¶ 8     In connection with the transaction, Alturas purchased a title

insurance policy underwritten by Commonwealth.  As a condition to

issue the policy, Commonwealth required Northcreek to execute an

owner's affidavit, which it did.  The affidavit represents, as item 8,

that "as of the closing there are no unpaid or delinquent real estate taxes . . . against [the] premises." As of that time, the 2020 real estate taxes hadn't been paid. The affidavit also includes an indemnification provision in which the "affiant(s)," defined in the affidavit as Northcreek,

> do hereby jointly and severally agree to indemnify and hold [Commonwealth] harmless of and from any and all loss, cost, damage, and expense of every kind, including attorney's fees, which [it] shall or may suffer or incur or become liable for under its [title insurance] policy or policies directly or indirectly, concerning any or all of the above stated items 1-2-3-4-5-6-7-8-9.

¶ 9 At closing, the parties prorated the 2021 real estate taxes, such that Northcreek credited Alturas for a percentage of the estimated annual taxes representing the twenty-eight days Northcreek owned the properties in 2021.

¶ 10 Shortly after the closing, Alturas, having realized that the 2020 real estate taxes hadn't been paid, reached out to Northcreek about paying them. When Northcreek refused to do so, Alturas pursued a claim with Commonwealth under the title insurance policy. Commonwealth paid the taxes and initiated this litigation.

4

¶ 11 Commonwealth brought claims against Northcreek and two related entities — Northcreek Fund and Younan Properties — for reformation of the special warranty deed, misrepresentation, and unjust enrichment. The three defendants then brought third-party claims against Alturas for breach of contract and unjust enrichment, and Alturas brought a counterclaim against them for reformation of the special warranty deed.

¶ 12 Following a bench trial, the trial court reformed the special warranty deed to reflect that the conveyance was subject to any lien to secure payment of real estate taxes from 2021, not 2020. The court also found that Commonwealth was entitled to $390,273.50 in damages on its misrepresentation claim, representing the 2020 real estate taxes the court found Northcreek was responsible for, and that Commonwealth was entitled to judgment in that amount against all three appellants. Finally, the court rejected appellants' unjust enrichment counterclaim. The court didn't expressly rule

on, but implicitly rejected, Commonwealth's unjust enrichment claim and appellants' breach of contract claim.[1]

## II. Reformation of the Special Warranty Deed

¶ 13 Appellants contend that the trial court erred by reforming the special warranty deed to reflect a lien for taxes from 2021 instead of 2020. We aren't persuaded.

### A. Relevant Legal Principles

¶ 14 Reformation of a deed is an equitable remedy, and the power to fashion such a remedy lies within the discretion of the trial court. *See Arrabelle at Vail Square Residential Condo. Ass'n v. Arrabelle at Vail Square LLC*, 2016 COA 123, ¶ 56; *Perfect Place v. Semler*, 2016 COA 152M, ¶ 49, *rev'd on other grounds*, 2018 CO 74. Therefore, we will not disturb the court's rulings absent an abuse of discretion. *Beren v. Beren*, 2015 CO 29, ¶ 12. A court abuses its discretion when its decision is manifestly arbitrary, unreasonable,

---

[1] Commonwealth's unjust enrichment claim was mooted by the resolution of its misrepresentation claim, as it had sought the same relief for both claims. *See Libertarian Party of Colo. v. Williams*, 2016 COA 5, ¶¶ 14-18 (determining that one claim was moot where the plaintiff had already recovered all the relief it was entitled to on another claim), *rev'd on other grounds*, 2017 CO 86.

or unfair, or when it misapplies the law. *See Davis v. GuideOne Mut. Ins. Co.*, 2012 COA 70M, ¶ 57.

¶ 15 "Reformation of a written instrument is appropriate only when the instrument does not represent the true agreement of the parties and the purpose of reformation is to give effect to the parties' actual intentions." *Ranch O, LLC v. Colo. Cattlemen's Agric. Land Tr.*, 2015 COA 20, ¶ 18 (quoting *Md. Cas. Co. v. Buckeye Gas Prods. Co.*, 797 P.2d 11, 13 (Colo. 1990)). Thus, in order to justify reformation, the evidence must clearly and unequivocally show that it is an appropriate remedy under the circumstances. *Id.* Parol evidence is admissible on a reformation claim to establish that the instrument doesn't reflect the parties' intent. *Boyles Bros. Drilling Co. v. Orion Indus., Ltd.*, 761 P.2d 278, 281 (Colo. App. 1988).

## B. Application

¶ 16 In ordering reformation of the special warranty deed, the trial court found that "it was the intent of the parties under the [agreement] and closing documents that the party in possession of the property pay the taxes that had accrued on the property while it was in that party's possession." Thus, the court found, "taxes were to be prorated for the year in which closing occurred and each party

7

would only be responsible for payment of taxes that accrued while it was in possession of the property." And the agreement's reference to the "most recent ascertainable tax bills" — which were the 2020 tax bills — simply meant that the 2020 bills were to be used to calculate the prorated amounts for 2021, not that the taxes due in those bills were the amounts being prorated.

¶ 17    In arriving at its finding regarding the parties' intent, the court relied largely on evidence demonstrating the following:

- When the parties entered into the agreement in October 2020, they seemed to anticipate the transaction would close that year. But it didn't close until January 2021.

- The agreement provides that "[r]eal estate taxes shall be prorated between [Northcreek] and [Alturas] based upon the actual days of ownership of the parties for the year in which [c]losing occurs . . . ."

- Nothing in the late 2020 or early 2021 amendments to the agreement altered the distribution of tax liability from what was originally agreed upon.

- The special warranty deed used to convey the properties in January 2021 — which refers to the 2020 but not the

8

2021 taxes — appears to be the same one attached as an exhibit to the agreement signed in October 2020. It seems the parties simply retrieved the existing draft from their packet of materials when they resumed negotiations in late 2020, and no one realized the need to change the reference from 2020 to 2021.

- At closing, the parties prorated the 2021 taxes such that Northcreek was responsible for the taxes for the part of the year when it owned the properties and Alturas for the part of the year when it owned them.

- When Northcreek originally purchased the properties in 2013, it didn't pay the real estate taxes for any time before it owned the properties.

- Alturas's expert witness, whom the court found "credible and persuasive," testified that a transaction whereby a purchaser pays the real estate taxes for a period of time when they didn't own the property would be so far outside of normal practice that one would expect it to be specifically set forth in the contract. Yet there was no such provision in the agreement, and there was no

9

evidence that the parties had discussed allocating the taxes to Alturas for a time before it owned the properties.

¶ 18   The court also explained that it wouldn't make sense for Alturas to be responsible for the entire tax obligation for 2020 when, had the transaction closed a few months earlier, it would've been responsible for the taxes for just the last few months of 2020 when it actually owned the properties.  Thus, the reasoning goes, it had to be the parties' intent that each would be responsible for the taxes for the time they actually owned the properties, and when the closing was pushed into 2021 that would mean that Northcreek would be responsible for those taxes through all of 2020 and for the short period in early 2021 when it owned the properties.

¶ 19   Based on this evidence and reasoning, we are satisfied that the trial court acted within its discretion in reforming the special warranty deed.  The court did not abuse its discretion in concluding that the evidence before it clearly and unequivocally demonstrated that reformation was appropriate because the parties had intended for each party to be responsible for the taxes incurred during the time of its ownership of the properties.  *See Ranch O*, ¶ 18.

¶ 20    We reject appellants' various arguments to the contrary as follows:

- The court didn't place the burden on Northcreek to provide evidence of the parties' intent. Instead, the court found, consistent with Alturas's expert's testimony, that if the parties had intended to shift the tax burden to Alturas for a time when Northcreek owned the properties, they would've specifically discussed the provision and included it in the agreement.

- The court correctly understood that the agreement provided for proration of the 2021 taxes, as that was the year of the closing. But it also understood that the agreement effectively allocated to Northcreek all taxes up to the date of closing, which would include the 2020 taxes.

- The court didn't err by considering parol evidence. As we've noted, such evidence is admissible to establish that an instrument doesn't reflect the parties' intent.

- The court didn't err by considering a hypothetical where the closing occurred in 2020. There was evidence

11

supporting the court's finding that the parties originally anticipated a 2020 closing, and the court was correct in noting that it didn't make sense that pushing the closing into early 2021 would leave Alturas with the entire tax liability for 2020 when it would've had only a small fraction of that liability had the closing occurred before the end of 2020.

- The court's minor mistake in indicating which party received the credit at closing for the 2021 taxes is irrelevant. It's obvious from the court's order that it understood the key fact — that is, that the parties allocated the 2021 taxes based on how long each owned the properties in 2021.

- And the reference in the agreement to "prorations" being "final" doesn't preclude Alturas from recovering the 2020 taxes Northcreek should've paid. Instead, it simply means that the prorations the parties agreed upon for the 2021 taxes — which were based on the 2020 tax assessment — were final and couldn't be renegotiated

12

even if the actual 2021 taxes ended up higher or lower than the parties had estimated.

¶ 21    Accordingly, we affirm the court's decision to reform the special warranty deed to accurately reflect the parties' intent.

### III.    Commonwealth's Misrepresentation Claim

¶ 22    Appellants also contend that the trial court erred by ruling in favor of Commonwealth on its misrepresentation claim because Commonwealth couldn't have reasonably relied on the statements in the owner's affidavit about unpaid taxes.  We disagree.  Although it was styled as a misrepresentation claim, the substance of the claim, as alleged and tried, was for indemnification.  And we conclude that the record supports the trial court's finding for Commonwealth on this claim.

### A.    Relevant Legal Principles

¶ 23    When a court enters judgment after a bench trial, that judgment presents a mixed question of law and fact.  *State Farm Mut. Auto. Ins. Co. v. Johnson*, 2017 CO 68, ¶ 12.

¶ 24    We review the trial court's interpretation of statutes and written instruments de novo.  *Kroesen v. Shenandoah Homeowners*

*Ass'n*, 2020 COA 31, ¶ 31; *Premier Bank v. Bd. of Cnty. Comm'rs*, 214 P.3d 574, 577 (Colo. App. 2009).

¶ 25     However, we review the court's findings of fact for clear error, such that we will uphold the findings if there is record evidence to support them. *Est. of Breeden v. Gelfond*, 87 P.3d 167, 172 (Colo. App. 2003); C.R.C.P. 52. As trier of fact, the trial court determines the sufficiency, probative effect, and weight of the evidence and assesses the credibility of the witnesses. *Breeden*, 87 P.3d at 172. "When the evidence is conflicting, a reviewing court may not substitute its conclusions for those of the trial court merely because there may be credible evidence supporting a different result." *Id.*

¶ 26     An agreement to indemnify is an agreement by one party to hold another harmless from specified losses or damages. *May Dep't Stores Co. v. Univ. Hills, Inc.*, 824 P.2d 100, 101 (Colo. App. 1991). The extent of the duty to indemnify is determined by the agreement itself. *Id.* "An indemnity provision 'should be enforced according to the plain and generally accepted meaning of its language and interpreted in its entirety to give effect to all of its provisions . . . .'" *D.R. Horton, Inc.-Denv. v. D & S Landscaping, LLC*, 215 P.3d 1163,

1171 (Colo. App. 2008) (quoting *Mid Century Ins. Co. v. Gates Rubber Co.*, 43 P.3d 737, 739 (Colo. App. 2002)).

## B.    Application

¶ 27    Appellants' arguments are premised on the assumption that Commonwealth's claim, styled in the complaint as a claim for "misrepresentation," was one for fraudulent or negligent misrepresentation.  But it's evident from the face of the complaint and the manner in which the claim was presented at trial that this was a claim for indemnification.  Although Commonwealth alleged as part of this claim that Northcreek had made misrepresentations in the owner's affidavit, Commonwealth sought to recover for those misrepresentations based on the affidavit's indemnification provision — not the common law of fraudulent or negligent misrepresentation.  And the trial court treated the claim as one for indemnification.  *See generally Grohn v. Sisters of Charity Health Servs. Colo.*, 960 P.2d 722, 727 (Colo. App. 1998) (we look to the "substance of [a] claim" rather than the title given to it (citing *Hutchinson v. Hutchinson*, 367 P.2d 594, 596 (Colo. 1961))).

¶ 28　　Thus, we, too, review this claim as one for indemnification under the owner's affidavit. Viewed in that light, there is ample evidence to support the trial court's ruling for Commonwealth.

¶ 29　　The indemnification provision in the owner's affidavit is broad. It states that the affidavit was "made for the purpose of inducing [Commonwealth] to issue an [o]wner's and/or [m]ortgagee's policy of title insurance on the [properties]." And it provides that Northcreek "agree[d] to indemnify and hold [Commonwealth] harmless of and from any and all loss, cost, damage, and expense of every kind, including attorney's fees, which [it] shall or may suffer or incur or become liable for under its [title insurance] policy or policies directly or indirectly, concerning any or all of the above stated items." Those stated items include item 8, which represented that there were no unpaid taxes on the properties.

¶ 30　　The trial court found that, contrary to the representation in item 8, there were unpaid taxes at the time of closing. The court also found that Commonwealth suffered damages by issuing a title insurance policy in reliance on that representation, only to later be required to pay the unpaid tax liability so that Alturas could obtain free and clear title. Both findings are amply supported by the

record.  Accordingly, the court correctly concluded that Commonwealth was entitled to indemnification.

¶ 31     Appellants nonetheless argue, citing cases involving common law fraudulent and negligent misrepresentation claims, that Commonwealth couldn't have reasonably relied on the representation in item 8 because it had actual knowledge that the taxes hadn't been paid.  Specifically, appellants maintain that Commonwealth had a statutory duty to review the tax certificates, and did in fact review those certificates, and that the certificates showed the 2020 real estate taxes hadn't been paid before closing. But reasonable reliance isn't a prerequisite to recovery under an indemnification agreement.  Instead, recovery depends on the language of the agreement.  *See D.R. Horton*, 215 P.3d at 1171; *May Dep't Stores*, 824 P.2d at 101.

¶ 32     And, as we've indicated, the indemnification language in the owner's affidavit is broad.  It includes "any and all loss, cost, damage, and expense of every kind" that Commonwealth "may suffer or incur or become liable for under its [title insurance] policy or policies directly or indirectly" concerning the representations in the affidavit.  This certainly includes losses Commonwealth suffered

17

due to the 2020 taxes that Northcreek was obligated to pay under the agreement and represented in the owner's affidavit it had paid, but in fact never did pay. *See Pub. Serv. Co. of Colo. v. United Cable Television of Jeffco, Inc.*, 829 P.2d 1280, 1283-85 (Colo. 1992) (indemnification language covering "all claims, liabilities, causes of action, or other legal proceedings . . . in any way arising out of, connected with[,] or resulting from" the rights granted under the agreement mandated indemnification for all losses, including those caused by the indemnitee's own negligence); *Lafarge N. Am., Inc. v. K.E.C.I. Colo., Inc.*, 250 P.3d 682, 686-87 (Colo. App. 2010) (similarly broad indemnification language mandated indemnification for all losses, including those caused by the indemnitee's own negligence).

¶ 33    Also, contrary to appellants' argument, the indemnification provision is binding on Northcreek. Northcreek executed the owner's affidavit as a necessary part of the transaction to sell the three properties to Alturas. Indeed, the trial court noted in its order that multiple witnesses had testified that the transaction could not have closed without completion of the affidavit, and there was unrebutted testimony at trial that in a multi-million dollar property

transaction like this one, a purchaser won't release the funds without title insurance, and an owner's affidavit is necessary to obtain that insurance.

¶ 34 Thus, considering the transaction as a whole, there was mutual assent and legal consideration for the promises Northcreek made in the affidavit. *See Univ. of Denver v. Doe*, 2024 CO 27, ¶ 47 (reciting the requirements for formation of a contract). And it was clear from the language of the affidavit that Commonwealth was, at a minimum, a third-party beneficiary that had standing to enforce its indemnification provision. *See S K Peightal Eng'rs, LTD v. Mid Valley Real Est. Sols. V, LLC*, 2015 CO 7, ¶ 7 ("A third-party beneficiary is a 'person not a party to an express contract [who nevertheless] may bring an action on the contract if the parties to the agreement intended to benefit the [third party and if] . . . the benefit claimed is a direct and not merely an incidental benefit of the contract.'" (alterations in original) (quoting *Parrish Chiropractic Ctrs., P.C. v. Progressive Cas. Ins. Co.*, 874 P.2d 1049, 1056 (Colo. 1994))); *Showpiece Homes Corp. v. Assurance Co. of Am.*, 38 P.3d 47, 50 (Colo. 2001) (noting that indemnitees were third-party beneficiaries of the underlying agreement).

¶ 35    Accordingly, we affirm the trial court's entry of judgment in favor of Commonwealth and against Northcreek on the misrepresentation claim.

## IV.    Damages Against Nonparties

¶ 36    Relatedly, appellants contend that even if the trial court properly found against Northcreek on the misrepresentation claim, the court erred by entering judgment against Northcreek Fund and Younan Properties on that claim as well, because neither entity was a party to the owner's affidavit.  We agree.

### A.    Relevant Legal Principles

¶ 37    This issue presents a question of contract interpretation that we review de novo.  *See Sch. Dist. No. 1 v. Denv. Classroom Tchrs. Ass'n*, 2019 CO 5, ¶ 11.

¶ 38    Our main goal in interpreting a contract is to discern and effectuate the parties' intent, which we ascertain primarily from the language of the instrument itself.  *Rocky Mountain Expl., Inc. v. Davis Graham & Stubbs LLP*, 2018 CO 54, ¶ 59.  If a contract is unambiguous, we will enforce it as written.  *Id.*

## B.    Application

¶ 39    In entering judgment against Northcreek Fund and Younan Properties, the trial court relied on the fact that the two appeared to be signatories to the owner's affidavit and that Northcreek Fund received the payment check when the transaction closed.

¶ 40    The owner's affidavit defines the "affiant" as Northcreek, thus making clear that Northcreek is the "affiant." Indeed, it provides that Northcreek is the "affiant, whether one or more," indicating that even where the affidavit uses the potentially plural "affiant(s)" and refers to "jointly and severally" agreeing to indemnify, the references are still to Northcreek alone. And under the terms of the affidavit, only the "affiant" made representations, including as to any unpaid taxes, and only the "affiant" agreed to indemnify Commonwealth. Thus, it is clear that Northcreek Fund and Younan Properties did not make the same representations or take on the same obligations that Northcreek did as the "affiant" of the affidavit.

¶ 41    And while Northcreek Fund and Younan Properties are signatories to the affidavit, the signature line makes clear that an individual named Zaya S. Younan signed the affidavit as the

21

president of Younan Properties, which was the manager of Northcreek Fund, which, in turn, was the sole member of Northcreek. The same is true of the purchase and sale agreement and its two amendments.

¶ 42 Thus, Northcreek Fund and Younan Properties signed the affidavit as agents — not as parties to the affidavit. *See Fink v. Montgomery Elevator Co. of Colo.*, 421 P.2d 735, 737 (Colo. 1966) ("[A] party is not liable upon a contract signed by him on behalf of another . . . when he has given notice to the third party that there is [a] principal for whom he acts and also notice of the name or identity of the principal."); *Water, Waste & Land, Inc. v. Lanham*, 955 P.2d 997, 1001 (Colo. 1998) ("If both the existence and identity of the agent's principal are fully disclosed to the other party, the agent does not become a party to any contract which he negotiates." (quoting Harold Gill Reuschlein & William A. Gregory, *The Law of Agency and Partnership* § 118 (2d ed. 1990))).

¶ 43 Because the language of the affidavit is unambiguous, we enforce it as written and conclude that the trial court erred by enforcing it against Northcreek Fund and Younan Properties. Although the court was correct in finding "no merit" to the claim

that "Northcreek Fund has no involvement in this case," simply being involved wasn't enough. Neither Northcreek Fund nor Younan Properties was a party to the affidavit; rather, both signed it as agents on behalf of a disclosed principal. And because we cannot disregard the corporate formalities of these separate entities, there is no basis to impose liability on them for the representations made and obligations taken by Northcreek, a limited liability company, in the affidavit. *See Dill v. Rembrandt Grp., Inc.*, 2020 COA 69, ¶ 27 (a limited liability company's members and managers are not personally liable for its obligations, as "the corporate veil fiction 'isolates "the actions, profits, and debts of the corporation from the individuals who invest in and run the entity"'" (quoting *Sedgwick Props. Dev. Corp. v. Hinds*, 2019 COA 102, ¶ 15)).

¶ 44 Commonwealth's arguments to the contrary rely on the facts that Northcreek Fund is Northcreek's sole member and that it received the proceeds of the transaction. While these facts might potentially support a claim to pierce the corporate veil, which would allow a court to disregard the corporate form and impose liability on Northcreek Fund and Younan Properties, Commonwealth never asserted such a claim, and the trial court didn't make any findings

23

on this issue. *See JW Constr. Co. v. Elliott*, 253 P.3d 1265, 1269 (Colo. App. 2011) (noting that while veil piercing might allow a court to disregard the corporate form, the trial court "made no findings regarding piercing of the corporate veil and the [third-party plaintiffs] did not plead or ask for relief under that theory").

¶ 45    Accordingly, we reverse the judgment entered against Northcreek Fund and Younan Properties.

## V.    Appellants' Breach of Contract Claim

¶ 46    Appellants' final contention is that the trial court erred by implicitly rejecting their breach of contract claim without sufficiently explaining its reasoning. We disagree.

### A.    Relevant Legal Principles

¶ 47    C.R.C.P. 52 provides that, in actions tried to the court without a jury, "the court shall find the facts specially and state separately its conclusions of law thereon." Under this rule, a trial court's order must include sufficient findings of fact and conclusions of law so as to give an appellate court a clear understanding of the basis of the decision. *In re Estate of Sky Dancer*, 13 P.3d 1231, 1233 (Colo. App. 2000). "The ultimate test as to the propriety of findings is whether they are sufficiently comprehensive to provide a basis for

decision and supported by the evidence." *Bonidy v. Vail Valley Ctr. for Aesthetic Dentistry, P.C.*, 232 P.3d 277, 281 (Colo. App. 2010) (quoting *Mowry v. Jackson*, 343 P.2d 833, 836 (Colo. 1959)).

## B.    Application

¶ 48    Appellants' claim against Alturas for breach of contract alleged that "Alturas failed to comply with the terms of the [purchase and sale agreement] by asserting that [Northcreek] was responsible for the 2020 taxes, and thereafter submitting a Notice of Claim to Commonwealth, which initiated this litigation relating to the 2020 taxes, for which Alturas was responsible consistent with [s]ection 5.5 of the [agreement], among other provisions."

¶ 49    While we agree with appellants that the trial court should have expressly ruled on this claim, it is clear from the court's analysis that it impliedly rejected the claim. *See Pacitto v. Prignano*, 2017 COA 101, ¶ 5 (noting that the trial court had "impliedly rejected" one of the parties' claims).

¶ 50    The court necessarily ruled against appellants on their breach of contract claim when it found that "it was the intent of the parties under the [purchase and sale agreement] and closing documents that the party in possession of the property pay the taxes that had

accrued on the property while it was in that party's possession" and, thus, that "each party would only be responsible for payment of taxes that accrued while it was in possession of the property." Simply put, the court found that Northcreek — not Alturas — was responsible for paying the 2020 taxes. This meant that appellants' claim — which was dependent upon a finding that Alturas was responsible for paying the 2020 taxes — failed. *See Johnson v. Neel*, 229 P.2d 939, 943 (Colo. 1951) (when the trial court made findings on the respondent's claim, "it necessarily found against the petitioners' claims as set forth in their counterclaim, which was diametrically opposed to [the] respondent's claim").

¶ 51 We also reject appellants' arguments citing sections of the agreement Alturas supposedly breached. As we've indicated, the language in section 5.5 about prorations being "final" concerned the proration of the 2021 tax liability — not the payment of the 2020 taxes, which didn't need to be prorated because they were entirely Northcreek's responsibility. The language in section 7.1 about Alturas accepting the properties "as is" relates to the condition of the properties — not the payment of previous tax liabilities. And the release language in section 7.2 applied only to Alturas and its

related parties — not Commonwealth — and excluded "any of [Northcreek's] obligations under this agreement" or "a breach of any express representation . . . of [Northcreek] contained herein."[2]

¶ 52    Accordingly, we affirm the trial court's implicit rejection of appellants' breach of contract claim against Alturas.

## VI.    Disposition

¶ 53    The judgment against Northcreek Fund and Younan Properties on the misrepresentation claim is reversed.  In all other respects, the judgment is affirmed.

JUDGE PAWAR and JUDGE JOHNSON concur.

---

[2] We decline to address appellants' argument, raised for the first time in their reply brief, that some parts of the agreement merged into the deed at the time of closing, thus extinguishing those obligations.  *See Saint John's Church in Wilderness v. Scott*, 2012 COA 72, ¶ 9 n.3 ("[W]e will not consider arguments raised for the first time in a reply brief.").