741 P.2d 1270 (1987)
1700 LINCOLN LIMITED, Plaintiff-Appellant,
v.
DENVER MARBLE AND TILE COMPANY, INC., Defendant-Appellee.
No. 85CA1442.
Colorado Court of Appeals, Div. III.
July 30, 1987.
Wood, Ris & Hames, P.C., Stephen E. Connor, Jeffrey Clay Ruebel, Gregory S. Russi, Denver, for plaintiff-appellant.
Douglas I. McQuiston, John E. Taylor, Denver, for defendant-appellee.
STERNBERG, Judge.
The determinative issue in this appeal is whether a builders' risk insurer of an owner-builder can successfully subrogate against a negligent co-insured subcontractor for damage incurred during construction of the owner's building. We hold that it may not and, therefore, affirm the trial court's grant of summary judgment dismissing such a suit.
The plaintiff, 1700 Lincoln Limited, (owner) contracted with J.A. Jones Construction Company (Jones) to build an office building. Continental Marble and Granite Company was awarded a subcontract to install granite on the side of the building, and Continental contracted some of that work to defendant, Denver Marble & Tile Company, Inc. The construction contract between the owner and Jones required the latter to obtain a comprehensive general liability policy and to require each subcontractor to obtain such coverage. Denver Marble obtained such a policy, and the owner was named as an additional insured on that policy. The owner had procured a builders' risk policy.
High winds caused a scaffold used by Denver Marble to break loose, resulting in extensive damage to the building. The owner submitted a claim to its builders' risk insurer, Northbrook Excess and Surplus Insurance Co. Northbrook paid the claim, less the deductible, and then filed a subrogation action against Denver Marble in the name of the owner, claiming that the accident was caused by the negligence of Denver Marble employees. In addition to paying the owner's claim, Northbrook also paid as a first party claim Denver Marble's losses, but does not seek to subrogate that amount.
The parties stipulated that Northbrook intended to provide coverage for Denver Marble under the owner's builders' risk policy by an endorsement to the policy which added the general contractor as an insured in its capacity "as General Contractor and as Agent for Its Subcontractors and the Subcontractors as their interests may appear."
*1271 Northbrook asserts that the intent of the parties was that the builders' risk policy of the owner would provide coverage in excess of that provided by the comprehensive general liability policy which each subcontractor was required under the contract to maintain. Evidence of this intent in the record consists of the requirement in the general construction contract that subcontractors obtain comprehensive general liability coverage and an "other insurance" clause in the builders' risk policy. However, an endorsement to the liability policy states that its coverage shall be excess over any property insurance available to the insured, such as builders' risk coverage.
Northbrook argues further that Denver Marble's comprehensive general liability policy covered the losses which occurred at the construction site, that its coverage should be considered "primary" to Northbrook's, and that it is entitled to seek subrogation for damage to the building. We do not agree with Denver Marble's contention that this issue was not preserved for review. It was raised in plaintiff's trial brief and, thus, is properly before us.
The owner and all the contractors involved in construction of the building at 1700 Lincoln Street were insureds under both policies. Denver Marble's liability policy excludes from coverage any damage to property owned by, or in the care, custody, or control of the "insured." Since the owner was also an insured under Denver Marble's liability policy, the damage to its building was excluded from coverage under that policy. Because the policy did not cover the loss, it is of no consequence that the parties by contract may have intended that policy to provide "primary" coverage.
Unlike Denver Marble's liability policy, the builders' risk policy of the owner does cover property of the insured from loss, "howsoever or wheresoever occurring," and does not exclude loss caused by negligence of the insured. The "other insurance" clause in the builders' risk policy specifies that that policy's coverage shall be considered excess to other insurance on property. As discussed above, the liability policy excluded this property from coverage; thus, the builders' risk policy is the only policy which covered the losses incurred.
Hence, the issue becomes whether Northbrook, as the owner's insurer, can subrogate against another of its insured, the subcontractor. As pointed out in Subrogation Against Builders' Risk Co-insureds, 3 FC & S Bulletins (National Underwriter Company) at Brs-1 (Dec.1983): "No decision acknowledging the subrogation rights of builders' risk insurers against negligent subcontractors has been handed down ... since 1976." Instead, decisions such as Baugh-Belarde Construction Co. v. College Utilities Corp., 561 P.2d 1211 (Alaska 1977); and South Tippecanoe School Building Corp. v. Shambaugh & Son, Inc., 183 Ind.App. 350, 395 N.E.2d 320 (1979), have refused to recognize the right to subrogate even where the subcontractors were specifically covered under the builders' risk policy "as their interest may appear." See also Continental Casualty Co. v. Empire Casualty Co., 713 P.2d 384 (Colo.App.1985) (cert. granted January 13, 1986). As pointed out by the Alaska court in the Baugh-Belarde decision, a conflict of interest would exist if an insurer were allowed to recover from one of its insureds, there would be a proliferation of litigation between insurers, and heavy burdens would be placed on subcontractors by requiring them to procure additional liability insurance coverage. We agree with this rationale and align ourselves with the rule of these cases, which we perceive to be the weight of authority.
Judgment affirmed.
VAN CISE and CRISWELL, JJ., concur.