BOULDER PLAZA RESIDENTIAL, LLC,
a Colorado limited liability company,
Plaintiff–Appellant,

v.

SUMMIT FLOORING, LLC, a Colorado
limited liability company,
Defendant–Appellee.

No. 06CA2558.

Colorado Court of Appeals,
Div. V.

April 17, 2008.

Rehearing Denied May 15, 2008.

Berg, Hill, Greenleaf & Ruscitti, LLP, George V. Berg, Jr., Heidi C. Potter, Judy B. Snyder, Boulder, Colorado, for Plaintiff–Appellant.

The Hustead Law Firm, P.C., Patrick Q. Hustead, Melissa W. Shisler, Denver, Colorado, for Defendant–Appellee.

Opinion by Judge J. JONES.

Plaintiff, Boulder Plaza Residential, LLC (BPR), appeals the district court's order awarding defendant, Summit Flooring, LLC (Summit), attorney fees and costs Summit incurred in defending against a contractual indemnity claim asserted by BPR. We affirm.

## I. Background

In 2000, BPR contracted with McCrerey & Roberts Construction Company, Inc. (McCrerey) for McCrerey to act as the general contractor on a residential condominium construction project known as One Boulder Plaza (the project). McCrerey subsequently entered into a subcontract with Summit for Summit to install hardwood floors in the project's residential units. Summit purchased an insurance policy from United Fire & Casualty Company (United) covering its work on the project. McCrerey was named in the policy as an additional insured.

Shortly after Summit completed the installation of the hardwood floors, BPR's representatives noticed some cupping, disbanding, panelizing, and splitting of the floor boards. BPR notified McCrerey of the alleged defects, and McCrerey then contacted Summit. McCrerey and Summit attempted to repair the floors, but were largely unsuccessful.

On August 30, 2004, BPR filed a lawsuit against McCrerey, McCrerey's owner, Summit, and Summit's owner, asserting numerous causes of action arising from the alleged defective installation of the hardwood floors. Summit filed a counterclaim against BPR for payment under the subcontract, and a similar cross-claim against McCrerey. McCrerey filed cross-claims against Summit on a variety of theories, and a counterclaim against BPR for payment under the contract.

On September 30, 2005, One Boulder Plaza Management Company, the entity responsible for managing the project's residential units, acting as an agent for 1301 Canyon Condominium Association (the homeowners association), filed a separate lawsuit against BPR, McCrerey, McCrerey's owner, Summit, and Summit's owner seeking compensation for the same alleged defects in the hardwood floors. The homeowners association was

subsequently substituted as the plaintiff. Because the second lawsuit involved essentially the same claims as the suit brought by BPR, the court consolidated the two cases.

Prior to trial, McCrerey and McCrerey's owner settled with BPR, on its own behalf and as assignee of the claims of the homeowners association. In return for a release from BPR, McCrerey agreed to pay BPR $800,000 in cash, release all other claims against BPR relating to this litigation, and assign all of its claims against Summit, Summit's owner, and United to BPR.

The case was tried to a jury on three claims by BPR, namely, common law indemnity, contractual indemnity, and breach of contract; Summit's counterclaim against BPR for breach of contract; and Summit's cross-claim against McCrerey for breach of contract. The jury found in Summit's favor on all of BPR's claims. The jury found in BPR's favor on Summit's counterclaim, but found in Summit's favor on its cross-claim against McCrerey.

Summit subsequently filed a motion for an award of its attorney fees and costs against BPR and McCrerey. As relevant here, Summit asserted that BPR, as the assignee of the subcontract, was liable for fees and costs pursuant to a prevailing party provision in the subcontract. That provision states:

> If any party hereto shall bring any suit or action against another for relief, declaratory or otherwise, arising out of this Subcontract, the prevailing party shall have and recover against the other party, in addition to all court costs and disbursements, such sum as the Court may adjudge to be reasonable attorneys' fees.

The district court entered a preliminary ruling finding that, pursuant to the prevailing party provision, Summit was entitled to recover its attorney fees and costs incurred in connection with BPR's contractual indemnity claim and Summit's cross-claim against McCrerey. The court held an evidentiary hearing, and based on the evidence presented awarded Summit $507,593.42 in attorney fees and costs against BPR and McCrerey, jointly and severally, designating BPR primarily liable and McCrerey secondarily liable. BPR filed a motion requesting that the court clarify whether and to what extent the attorney fees and costs awarded to Summit are subject to the antisubrogation rule (which states that an insurer has no right of subrogation against its own insured), and therefore not recoverable by Summit. The court denied BPR's motion without reaching the merits of BPR's antisubrogation rule argument.

BPR appealed the judgment against it on its contractual indemnity claim, and separately appealed the district court's award of attorney fees and costs. We affirmed the judgment against BPR on its contractual indemnity claim. *See Boulder Plaza Residential, LLC v. Summit Flooring, LLC,* 198 P.3d 1217 (Colo.App.2008).

## II.   Discussion

BPR's sole contention on appeal is that the district court erred in awarding Summit all of its attorney fees and costs because Summit's litigation expenses, including attorney fees, were paid for by United pursuant to the insurance policy. Specifically, BPR argues that United, while not a party in this case, is, nonetheless, the "real party in interest," and that pursuant to the antisubrogation rule, United is prohibited from recovering costs from BPR, as the assignee of all of the co-insured party's (McCrerey's) claims. We conclude, however, that BPR's reliance on the antisubrogation rule is misplaced.

### A.   Preservation of Issue

■ At the outset, we reject Summit's contention that BPR waived its right to assert the antisubrogation rule by failing timely to raise it in the district court. BPR raised the issue at the hearing on the amount of attorney fees and costs to be awarded when it became clear United had paid all of those expenses for Summit. We are not persuaded by Summit's argument that BPR was on notice of United's payment of those expenses several months earlier merely because it had some indication United was providing Summit a defense. Further, given the course of the proceedings, Summit had ample opportunity to contest, and the court had ample opportunity to consider and (if it so chose) rule on, BPR's argument.

### B. Applicability of the Antisubrogation Rule

■ "Under the doctrine of equitable subrogation, when an insurer has paid its insured for a loss caused by a third party, it may seek recovery from the third party." *Continental Divide Ins. Co. v. Western Skies Management, Inc.,* 107 P.3d 1145, 1148 (Colo. App.2004); *accord Cotter Corp. v. Am. Empire Surplus Lines Ins. Co.,* 90 P.3d 814, 833 (Colo.2004). However, an insurer generally has no right of subrogation against its own insured. *Continental Divide Ins. Co.,* 107 P.3d at 1148; *1700 Lincoln Ltd. v. Denver Marble & Tile Co.,* 741 P.2d 1270, 1271 (Colo. App.1987). This principle, commonly known as the antisubrogation rule, prohibits an insurer from seeking recovery against its own insured on "a claim arising from the risk for which the insured was covered." *Continental Divide Ins. Co.,* 107 P.3d at 1148.

> This rule serves two purposes: (1) it prevents the insurer from passing the loss back to its insured, an act that would avoid the coverage that the insured had purchased; and (2) it guards against conflicts of interest that might affect the insurer's incentive to provide a vigorous defense for its insured.

*Id.*

■ Here, even if we assume, as BPR contends, that the antisubrogation rule may be asserted by a co-insured which asserted claims against an insured, *see 1700 Lincoln Ltd.,* 741 P.2d at 1271, and that United's status as a nonparty is irrelevant because it is the real party in interest, the antisubrogation rule does not apply because BPR is not an "insured" party. In its reply brief, BPR concedes that McCrerey "did not assign [its insurance policy with United] to BPR" and that, in fact, BPR has "never claimed to be an 'insured' under the Policy." (And we note the policy cannot be assigned without United's written consent.) These statements constitute judicial admissions. *Kempter v. Hurd,* 713 P.2d 1274, 1279 (Colo.1986) ("A judicial admission is a formal, deliberate declaration which a party or his attorney makes in a judicial proceeding for the purpose of dispensing with proof of formal matters or of facts about which there is no real dispute.").

Assuming they are unequivocal, "[j]udicial admissions are binding on the party who makes them, are evidence against such party, and may furnish the basis for a verdict." *Salazar v. American Sterilizer Co.,* 5 P.3d 357, 365 (Colo.App.2000); *see also Purgess v. Sharrock,* 33 F.3d 134, 144 (2d Cir.1994) (statement by defense counsel in a footnote in a memorandum of law was a judicial admission); *City Nat'l Bank v. United States,* 907 F.2d 536, 544 (5th Cir.1990) (statements in bank's brief were binding judicial admissions); *Postscript Enterprises v. City of Bridgeton,* 905 F.2d 223, 227–28 (8th Cir. 1990) (statements made by party in its brief and at oral argument constituted judicial admissions); *Young & Vann Supply Co. v. Gulf, Florida & Alabama Ry. Co.,* 5 F.2d 421, 423 (5th Cir.1925) (court considered "statements in the brief as admissions of facts"); *cf. Kempter,* 713 P.2d at 1279 (statements by petitioners' attorney at oral argument constituted judicial admissions); *Holiday Acres Property Owners Ass'n, Inc. v. Wise,* 998 P.2d 1106, 1110 (Colo.App.2000) (court affirmed award of attorney fees based on judicial admissions in responses to interrogatories).

The fact McCrerey may have assigned a chose in action under the insurance policy to BPR does not render BPR an "insured" insofar as the antisubrogation rule is concerned. No insurance coverage was paid for by or for the benefit of BPR. Thus, requiring BPR to pay Summit's attorney fees pursuant to the subcontract does not pass the "loss" back to any party that purchased coverage for the loss. *See Continental Divide Ins. Co.,* 107 P.3d at 1148.

■ We reject BPR's contention that Summit waived its right to contest BPR's reliance on the antisubrogation rule by seeking to take affirmative advantage of the assignment from McCrerey to BPR. Summit has taken advantage of that assignment only to the extent it has sought an award of attorney fees and costs pursuant to the subcontract. BPR points to nothing in the record showing that Summit has taken any advantage of McCrerey's purported assignment of claims under the insurance policy.

Though United paid Summit's attorney fees and litigation costs, Summit is nevertheless entitled to seek recovery of those fees and costs from any party liable therefor. Whether Summit must in turn remit any recovery of such fees and costs to United does not impair its right to recover them from BPR. *See Mullins v. Kessler,* 83 P.3d 1203, 1204–05 (Colo.App.2003); *Little v. Fellman,* 837 P.2d 197, 204–05 (Colo.App.1991), *overruled on other grounds by In re Marriage of Aldrich,* 945 P.2d 1370 (Colo.1997).

The order is affirmed.

Judge ROY and Judge GRAHAM concur.