**Thomas BARRON and Marie Barron**

v.

**CATERPILLAR, INC.**

Civil Action No. 95–5149.

United States District Court,
E.D. Pennsylvania.

June 20, 1996.

Bayard H. Graf, George D. Sheehan, Jr., Sweeney Sheehan & Spencer, Philadelphia, PA, for plaintiffs.

Ronald L. Daugherty, White and Williams Philadelphia, PA, Francis P. Devine, III, White and Williams, Philadelphia, PA, for defendant.

### MEMORANDUM

PADOVA, District Judge.

Plaintiffs, Thomas Barron and Marie Barron (the "Barrons") bring this products liability lawsuit against Caterpillar, Inc. ("Cat") to recover for injuries Thomas Barron sustained while working with a piece of equipment manufactured by Cat. The Barrons currently submit for the Court's consideration a motion to compel the deposition of an additional corporate designee. For the following reasons, I will deny the Barrons' Motion.

### I. FACTS

The Barrons' Complaint asserts the following. In 1969, Cat designed and manufactured the "Caterpillar 992" front end loader ("992"). Cat sold the 992 to Thomas Barron's employer, the Jeddo–Highland Coal Company ("Jeddo") in the same year. Thomas Barron worked as a mechanic at Jeddo. On April 12, 1993, Thomas Barron sustained injuries while installing a lift cylinder in the 992: a crushed left hand, the amputation of one or more fingers, and other neurological and orthopedic injuries.

The Barrons allege that Cat sold the 992 without "the necessary and adequate customized or special tools and accessories, and [Cat] failed to provide the necessary, adequate and comprehensive warnings and instructions for the safe removal and installation of lift cylinders." Pl.'s Compl. at ¶ 6. Cat purportedly failed to supply the 992 with the appropriate beam and trolley assembly necessary to change the cylinder safely. According to the Barrons, these failures, in conjunction with Cat's negligent and defective design, manufacture, and assembly of the 992, caused the accident.[1]

### II. DISCUSSION

■ Rule 30 of the Federal Rules of Civil Procedure addresses the appointment of corporate designees:

> A party may in the party's notice [of examination] and in a subpoena name as the deponent a ... private corporation ... and describe with reasonable particularity the matters on which examination is requested.... [T]he organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.... [T]he persons so designated shall testify as to matters known or reasonably available to the organization.

Fed.R.Civ.P. 30(b)(6). Rule 30(b)(6) allows an entire corporation to speak through one agent. *See Resolution Trust Corp. v. S. Union Co., Inc.*, 985 F.2d 196, 197 (5th Cir. 1993) (noting "[w]hen a corporation or association designates a person to testify on its behalf, the corporation appears vicariously through that agent").

■ Rule 30(b)(6) also imposes a duty to produce an individual with knowledge over the relevant subject matter. The party seeking discovery names the corporation as the deponent, and "[i]t is then the duty of the corporation to name one or more persons who consent to testify on its behalf and these persons must testify as to matters known or reasonably available to the corporation." Charles A. Wright, Arthur R. Miller, and Richard L. Marcus, Federal Practice and Procedure § 2103 (1994) ("Federal Practice and Procedure"). *See Resolution Trust*, 985 F.2d at 197 (noting Rule 30(b)(6) "streamlines the discovery process. It places the burden of identifying responsive witnesses for a corporation on the corporation"); *Buycks–Roberson v. Citibank Fed. Sav. Bank*, 162 F.R.D. 338, 342 (N.D.Ill.1995) (reading Rule 30(b)(6) as imposing a duty to "make a conscientious good faith effort to designate the persons having knowledge of the matters sought by the discovering party and to prepare those persons in order that

---

1. The Barrons' Complaint presents three causes of action, product liability (Count I), negligence (Count II), and loss of consortium (Count III) (Marie Barron against Cat).

they can answer fully, completely, unevasively, the questions posed by the discovering party as to the relevant subject matters") (citation omitted).

■ Often, the corporate designee lacks sufficient knowledge of the relevant facts to provide adequate responses to the discovering party's requests. In such a situation, the onus falls on the corporation to present an additional designee capable of providing sufficient answers to the eluded requests. *See* Federal Practice and Procedure § 2103 (stating "[i]f in the course of taking the deposition it becomes apparent that the persons designated are not able to provide testimony on the matters specified in the notice, it is the duty of the corporation immediately to make a new designation substituting someone who can give the needed testimony").

■ Some courts consider the unresponsive corporate designee tantamount to a "no show." Specifically, when the corporate designee lacks knowledge over the pertinent subject matter, courts find that the corporation has failed to make any appearance at the deposition: "[i]f that agent is not knowledgeable about the relevant facts, and the principal has failed to designate an available, knowledgeable, and readily identifiable witness, then the appearance is, for all practical purposes, no appearance at all." *Resolution Trust,* 985 F.2d at 197.

■ In the instant case, Cat named Robert W. Lichti as its corporate designee, and the Barrons deposed Lichti on April 19, 1996. The Barrons move to compel the deposition of another corporate designee, arguing Lichti provided deficient answers on a number of topics and does not qualify as an adequate corporate designee.[2] It is the Barrons' contention that Cat can and should produce an additional corporate designee for deposition who possess more knowledge over the relevant subject matter than Lichti. Cat contests the Barrons' assertion, presenting Lichti as the most qualified person available concerning the 992. According to Cat, the instant litigation involves a machine designed in the mid 1960s and produced in 1970 as well as certain tools mentioned in a 1971 Cat manual. Furthermore, Cat did not manufacture the 992 after 1973. Cat avers that information documenting the 992's design and manufacture is sparse.

The Court agrees with Cat's position. Because this litigation involves a piece of equipment that Cat designed and manufactured roughly twenty five years ago, both parties should anticipate the unavailability of certain information concerning the machine. As manager of the team that designed the 992, Lichti provides the Barrons with their best chance of obtaining any information concerning the 992's design and manufacture. Because Lichti worked for Cat in this capacity at thirty-six (36) years of age and now appears as a corporate designee at the age of 65, both parties should expect that the inescapable and unstoppable forces of time have erased items from his memory which neither party can retrieve. Accordingly, the Court concludes that requiring Cat to appoint an additional corporate designee presents an inappropriate remedy to cure the discovery problems presented in this case.

■ *United States v. Mass. Indus. Fin. Agency,* 162 F.R.D. 410 (D.Mass.1995) provides an alternative solution. There, the court declined the government's motion for the appointment of an additional Rule

---

2. Those topics that allegedly received deficient answers included *inter alia* whether the beam and trolley assembly procedure had any advantages; the name of the manufacturer who produced the assembly; whether Cat used the assembly in front end loaders it produced before the 992; why Cat would have included the assembly procedure in the manual; whether there were any risks associated with the mechanics of changing lift cylinders on the 992; the preparation of those pages in the service manual for the 992 pertaining to changing lift cylinders; whether Cat researched all available, alternative methods of removing lift cylinders; who was in charge of the team that designed the 992, the names of those team members, and whether such team exists today; the names of the person who designed special service tools for the 992; the location of the records concerning the product safety group for the 992; the names of persons who conducted the safety audit for the 992; communications between Cat and mechanics in the field concerning defects with the 992; training programs designed for the 992; the use of the 992 in the surface mining industry; and Cat's marketing strategy for the 992 with regard to the surface mining industry.

30(b)(6) designee after the one presented purportedly failed to provide complete responses to the government's requests.

> It is evident to the Court that [defendant] could have done a better job in preparing [the witness] for the deposition. Such preparation ... is required for a Rule 30(b)(6) deposition. However, the Court disagrees that [the witness'] inability to fully testify on all the topics set forth in the notice was tantamount to a complete failure of the agency to appear. The Court does not believe, given the facts before it, that Defendant acted willfully or in bad faith to obstruct discovery. As a result, the most the Court will do ... is to require [defendant] to produce more documents and clarify its position in response to a number of interrogatories. However, the Court will not order [defendant] to produce another Rule 30(b)(6) deposition witness.

*Id.* at 412. Similarly, the Court declines to conclude that Lichti's inability to provide sufficient responses to the Barrons' requests indicates that Cat acted willfully or in bad faith to obstruct discovery.

While the Court considers the appointment of an additional corporate designee unnecessary, it will allow the Barrons to conduct further discovery in an effort to obtain information supplementing those portions of Licthti's testimony which they consider inadequate. The Barrons are therefore granted leave to file additional interrogatories and requests for the production of documents. Cat may explain its position further through responses to those interrogatories and requests.

Cat posits that the Barrons did not list in their "Notice of Corporate Designee" those questions that Lichti could not answer. According to Cat, the Barrons also posed questions that required answers beyond Lichti's grasp. Addressing this concern, the Court concludes that the Barrons may only seek information within the purview of the topics itemized in their "Notice of Deposition of Corporate Designee." [3]

An appropriate Order follows.

AND NOW, this 14th day of June, 1996, upon consideration of Plaintiffs' Motion to Compel the Deposition of an Additional Corporate Designee (Doc. No. 19) and Defendant's Response thereto (Doc. No. 21), IT IS HEREBY ORDERED THAT:

1. Plaintiffs' Motion is DENIED.
2. Plaintiffs are granted leave to file additional interrogatories and requests for the production of documents seeking information within the purview of the topics itemized in Plaintiffs' "Notice of Deposition of Corporate Designee."

---

compel answers to interrogatories and the production of documents.

In the instant case, the Court faces issues concerning the appointment of a corporate designee. The authorities referred to *supra* reveal a corporate duty to first appoint the designee and then to select an additional designee if the first appointment fails to adequately respond to the discovering party's requests. While both *Corrigan* and the instant case involve discovery disputes, the dispute here arises in an entirely different context. This difference precludes the applicability of the standard announced in *Corrigan* to this litigation.

---

**3.** The Court questions Cat's reliance on *Corrigan v. Methodist Hosp.*, 158 F.R.D. 54 (E.D.Pa.1994), for the proposition that the Barrons have failed to satisfy *their* burden of showing the necessity of the additional discovery. *See id.* at 57 (noting "the party opposing discovery has the burden to raise an objection, then the party seeking discovery must demonstrate the relevancy of the requested information. Once this showing is made, the burden switches again to the party opposing discovery to show why discovery should not be permitted.") (citation omitted). *Corrigan* involved a patient suing his physician for medical malpractice. The plaintiff moved to .