D.R. HORTON, INC.-DENVER, d/b/a Trimark Communities, Defendant–Appellant and Third–Party Plaintiff,

v.

D & S LANDSCAPING, LLC and J & K Pipeline, Inc., Third–Party Defendants–Appellees.

No. 07CA0890.

Colorado Court of Appeals, Div. V.

June 26, 2008.

Rehearing Denied July 31, 2008.

Certiorari Dismissed Jan. 6, 2009.

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2007.

Holland & Hart, LLP, Marcy G. Glenn, Ryan T. Bergsieker, Denver, Colorado, for Defendant–Appellant and Third–Party Plaintiff.

Burg Simpson Eldredge Hersh & Jardine, P.C., Stephen M. Johnson, Diane Vaksdal Smith, Englewood, Colorado, for Third–Party Defendant–Appellee D & S Landscaping, LLC.

Pryor Johnson Carney Karr Nixon, P.C., Bradley N. Shefrin, Elizabeth C. Moran, Greenwood Village, Colorado, for Third–Party Defendant–Appellee J & K Pipeline, Inc.

Opinion by Judge GRAHAM.

In a construction defect suit brought by a homeowners association, the developer, third-party plaintiff, D.R. Horton, Inc., appeals the district court's summary judgments in favor of two subcontractors, third-party defendants, D & S Landscaping, LLC (D &

S) and J & K Pipeline, Inc. (J & K). We affirm.

## I.  Background

D.R. Horton developed the Park Avenue townhome community in Arapahoe County and subcontracted with D & S to install landscaping and irrigation systems at the project.  J & K's subcontract called for it to provide excavation, backfill, soil compaction, rough grading (including grading for garages, patios, and sidewalks), and installation of sewer lines, water lines, and storm sewers at the project.

Park Avenue Homeowners Association, Inc. (the HOA) sued D.R. Horton for alleged construction defects, including improper soil compaction, improper drainage, exterior and interior concrete problems, improper driveways, and improperly designed and installed landscaping and irrigation.  In its initial list of defects, the HOA alleged that there were surface drainage problems caused by defective grading, landscaping, and storm drainage pipes.

In turn, D.R. Horton brought third-party claims against D & S and J & K, for breach of contract, breach of express warranty, contractual indemnification, common law indemnification, contribution, and negligence.

During the discovery phase of the case, D.R. Horton was served with a notice to take the deposition of its C.R.C.P. 30(b)(6) designee regarding specific issues, including landscaping errors with regard to fine grading, errors with regard to drain pipe installation, and "any other errors D.R. Horton claims were made by subcontractors."

D.R. Horton did not file a motion for protective order.  Instead, it advised the subcontractors that its C.R.C.P. 30(b)(6) designee would be a vice president of sales and marketing, who was "the only employee remaining with the company who was employed" at the time the project was constructed and sold.  D.R. Horton further advised that the designee's knowledge was limited to sales and marketing but, "[She] should be in a position to identify former employees who may have knowledge regarding specific questions, and we can dis-

cuss whether you want to depose those individuals as fact witnesses."

At the deposition, the designee testified that she was not aware of any problems the subcontractors had "with performing their work" at the project; that specific individuals who had since become employed elsewhere, she presumed in Colorado, were assigned to the warranty department and were knowledgeable about warranty and negligence matters; that she had no information with regard to the claims made by D.R. Horton against the subcontractors; and that she specifically had no information as to:

- Whether the subcontractors performed their work negligently;
- Whether there were any errors made with respect to the subcontractors' work;
- Whether the subcontractors breached their contracts with D.R. Horton; and
- Whether the subcontractors failed to respond to warranty requests.

J & K and D & S each filed a motion for summary judgment.  J & K argued that D.R. Horton's third-party claims failed as a matter of law because (1) it could not bring a common law indemnity claim as a joint tortfeasor; (2) its C.R.C.P. 30(b)(6) designee had no evidence to support its claims; (3) there was no evidence that J & K was responsible for the subgrade at the project; (4) its contractual indemnity claim was illusory, created a contract of adhesion, was void as against public policy, and was lacking in consideration, as it related to its own negligence; and (5) its comparative negligence in supervising J & K precluded it from prevailing on its negligence and contribution claims.

D & S argued that D.R. Horton's third-party claims should fail because (1) its C.R.C.P. 30(b)(6) designee testified that she had no information regarding the work performed by the subcontractors at the project; and (2) it had presented "no evidence that any work specifically performed by D & S was deficient in any way" and no evidence "to support any damages being allocated to D & S."

In response, D.R. Horton withdrew its common law indemnification claim.  With regard to its other claims, D.R. Horton argued

that J & K and D & S failed to establish that it did not have any fact or expert witnesses with information relating to its claims against them. In support of its bare response, it referenced its own-earlier-denied motion for partial summary judgment against J & K and D & S. That motion relied upon various unsworn expert reports opining about the specific construction defects at the project, and an affidavit of its president, who identified the scope of work performed at the project by J & K and D & S based on the subcontracts. Although D.R. Horton incorporated included reports which concluded that the subcontractors' work was substandard, none of the reports was verified. Nor did D.R. Horton reference any sworn deposition testimony of any expert.

In separate orders, the district court granted the motions for summary judgment. The court ruled that the expert reports and the testimony of D.R. Horton's C.R.C.P. 30(b)(6) designee established that there was no genuine issue of material fact and that D.R. Horton had "not met its burden as set forth in the caselaw and [C.R.C.P.] 56," to counter the subcontractors' showing that there was no genuine issue for trial. The court reasoned that D.R. Horton's response only referred to expert opinions, C.R.C.P. 26 disclosures, pleadings, and arguments of counsel, none of which was sufficient to overcome the subcontractors' supporting materials.

D.R. Horton's various motions for reconsideration were denied, and it brought this appeal.

## II. Standard of Review

We review de novo the district court's grant of a summary judgment motion. *See A.C. Excavating v. Yacht Club II Homeowners Ass'n,* 114 P.3d 862, 865 (Colo.2005).

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." C.R.C.P. 56(c); *see also A.C. Excavating,* 114 P.3d at 865. "Unsworn expert witness reports are not admissible to support or oppose a motion for summary judgment." *McDaniels v. Laub,* 186 P.3d 86, 87 (Colo.App.2008).

C.R.C.P. 56(e) makes clear that

[w]hen a motion for summary judgment is made and supported as provided in this [r]ule, an adverse party may not rest upon the mere allegations or denials of the opposing party's pleadings, but the opposing party's response by affidavits or otherwise ... must set forth specific facts showing that there is no genuine issue for trial.

The rule also specifies that supporting and opposing affidavits, inter alia, "shall set forth such facts as would be admissible in evidence."

Summary judgment is a drastic remedy that is never warranted unless there is a clear showing that there is no genuine issue of material fact. *See Bebo Constr. Co. v. Mattox & O'Brien, P.C.,* 990 P.2d 78, 83 (Colo.1999); *Goodwin v. Thieman,* 74 P.3d 526, 528 (Colo.App.2003). In other words, summary judgment is appropriate only in the clearest of cases, where there is no doubt concerning the facts. *See Roderick v. City of Colorado Springs,* 193 Colo. 104, 106, 563 P.2d 3, 5 (1977).

The moving party bears the burden of establishing the absence of a genuine issue of material fact. *See Aspen Wilderness Workshop, Inc. v. Colorado Water Conservation Bd.,* 901 P.2d 1251, 1256 (Colo.1995); *Civil Serv. Comm'n v. Pinder,* 812 P.2d 645, 649 (Colo.1991); *Ginter v. Palmer & Co.,* 196 Colo. 203, 206, 585 P.2d 583, 584–85 (1978). "The nonmoving party is entitled to the benefit of all favorable inferences that may be drawn from the undisputed facts, and all doubts as to the existence of a triable issue of fact must be resolved against the moving party." *A.C. Excavating,* 114 P.3d at 865; *accord Bebo,* 990 P.2d at 83. "[A]n issue of material fact is one, the resolution of which will affect the outcome of the case." *Krane v. Saint Anthony Hosp. Sys.,* 738 P.2d 75, 77 (Colo.App.1987).

Where, as here, summary judgment is sought regarding an issue on which the moving party would not bear the burden of persuasion at trial, the moving party can meet

its initial burden of production by showing that there is an absence of evidence in the record to support the nonmoving party's case. Once the moving party has done so, the burden is then placed upon the nonmoving party to establish that there is a triable issue of fact. If the nonmoving party cannot muster sufficient evidence to make out a triable issue of fact, a trial would be useless, and the moving party is entitled to summary judgment as a matter of law. *Cont'l Air Lines, Inc. v. Keenan,* 731 P.2d 708, 712–13 (Colo.1987); *White v. Jungbauer,* 128 P.3d 263, 264 (Colo.App.2005). The nonmoving party acts at his peril unless he sets forth specific facts showing that there is a genuine issue for trial. *See* C.R.C.P. 56(e); *Pinder,* 812 P.2d at 649; *Ruscitti v. Sackheim,* 817 P.2d 1046, 1048 (Colo.App.1991).

> Unless the moving party meets his burden, the opposing party may, but is not required to submit an opposing affidavit. Obviously, it is perilous for the opposing party to neither proffer an evidentiary explanation nor file a responsive affidavit. Stubborn reliance upon allegations or denials in the pleadings will not suffice when faced with an affidavit affirmatively showing the absence of a triable issue of material fact.

*Ginter,* 196 Colo. at 207, 585 P.2d at 585 (internal citations omitted).

D.R. Horton contends that the district court erred in granting summary judgment in favor of J & K and D & S because (1) it was not required to submit evidence of negligence to defeat a summary judgment motion on its breach of contract, breach of warranty, and contractual indemnity claims and (2) there were genuine issues of material fact based on the evidence before the court. D.R. Horton contends that the documents it disclosed under C.R.C.P. 26 disclosures, its identification of witnesses, and its expert reports all combined to raise material issues of fact and that the trial court erred in focusing on the Rule 30(b)(6) designee's lack of knowledge in concluding that no triable issues remained for trial. We disagree.

### III. Application of C.R.C.P. 30(b)(6)

Central to our holding is the application of C.R.C.P. 30(b)(6) because in granting summary judgment, the district court relied upon the sworn testimony of a D.R. Horton representative endorsed under this rule. We therefore analyze that rule of discovery in order to provide some context for our conclusion that the subcontractors met their initial burden of proving that there were no genuine factual issues remaining for trial. An understanding of its operation also aids an understanding of why we reject D.R. Horton's arguments on appeal.

That rule provides in pertinent part:

> A party may in his notice name as the deponent a public or private corporation or a partnership or association or governmental agency and designate with reasonable particularity the matters on which examination is requested. The organization so named shall designate one or more officers, directors, or managing agents, *or other persons who consent to testify on its behalf,* and may set forth, for each person designated, the matters on which he will testify. The persons so designated shall testify as to matters known *or reasonably available to the organization.*

C.R.C.P. 30(b)(6) (emphasis added).

There is a paucity of Colorado law interpreting C.R.C.P. 30(b)(6) and its use. However, the rule has been interpreted in federal courts and other state courts. Because the federal rule is identical to Colorado's rule, federal cases interpreting the rule are highly persuasive. *See Leaffer v. Zarlengo,* 44 P.3d 1072, 1080–81 (Colo.2002); *Akin v. Four Corners Encampment,* 179 P.3d 139, 146 (Colo. App.2007).

When choosing a C.R.C.P. 30(b)(6) designee, companies "have a duty to make a conscientious, good-faith effort to designate knowledgeable persons" and "to prepare them to fully and unevasively answer questions about the designated subject matter." *Starlight Int'l Inc. v. Herlihy,* 186 F.R.D. 626, 639 (D.Kan.1999) (*citing Dravo Corp. v. Liberty Mut. Ins. Co.,* 164 F.R.D. 70, 75 (D.Neb.1995)). Some courts have concluded that the rule "implicitly requires persons to review all matters known or reasonably available" to the corporation. *Sprint Commc'ns*

*Co., L.P. v. Theglobe.com, Inc.,* 236 F.R.D. 524, 528 (D.Kan.2006) (*quoting T & W Funding Co. XII, L.L.C. v. Pennant Rent–A–Car Midwest, Inc.,* 210 F.R.D. 730, 735 (D.Kan. 2002)). Thus, personal knowledge of a matter by the designee is not required. *T & W Funding,* 210 F.R.D. at 735; *see also Calzaturficio S. C.A.R.P.A. v. Fabiano Shoe Co.,* 201 F.R.D. 33, 36 (D.Mass.2001); *Marker v. Union Fid. Life Ins. Co.,* 125 F.R.D. 121, 126 (M.D.N.C.1989).

"[T]he Rule makes clear that a party is not permitted to undermine the beneficial purposes of the Rule by responding that no witness is available who personally has direct knowledge concerning the areas of inquiry." *Sprint Commc'ns,* 236 F.R.D. at 528. Indeed, the company should, if necessary, "prepare deponents by having them review prior fact witness deposition testimony as well as documents and deposition exhibits." *United States v. Taylor,* 166 F.R.D. 356, 362 (M.D.N.C.1996). Allowing a company to designate a witness who is unprepared or not knowledgeable would simply defeat the purpose of the rule and "sandbag" the opposition. *Id.; see also King v. Pratt & Whitney,* 161 F.R.D. 475, 476 (S.D.Fla.1995) (noting that the rule delineates an affirmative duty— "The corporation has an affirmative duty to produce a representative who can answer questions that are both within the scope of the matters described in the notice and are 'known or reasonably available' to the corporation."), *aff'd,* 213 F.3d 646 (11th Cir.2000) (unpublished table decision); *T & H Landscaping, LLC v. Colo. Structures, Inc.,* (D.Colo. No. 06–cv–00891–REB–MEH, Aug. 28, 2007) (unpublished order on motion to compel) (noting that the requirement to produce a witness negates the potential for the party seeking discovery to be shuffled back and forth from one corporate representative to another).

■ Where a corporation designates a deponent who appears but is unable to answer all the questions specified in the notice, a court may issue sanctions for failure to appear under C.R.C.P. 37. *Mun. Subdistrict v. OXY, USA, Inc.,* 990 P.2d 701, 710 (Colo. 1999). Indeed, when the corporation fails to designate the proper person, "the appear-

ance is, for all practical purposes, no appearance at all." *Resolution Trust Corp. v. Southern Union Co.,* 985 F.2d 196, 197 (5th Cir.1993).

■ Although the necessity of producing a prepared and knowledgeable witness may be burdensome to a corporation, the burden is not unreasonable because it is the natural result of the privilege of using the corporate form to conduct business. *Requa v. C.B. Fleet Holding Co.,* (D.Colo. No. 06–cv–01981–PSF–MEH, July 31, 2007) (unpublished order on motion to compel); *see also Flower v. T.R.A. Indus., Inc.,* 127 Wash.App. 13, 111 P.3d 1192, 1205 (2005) (a corporation must prepare witnesses to "give complete, knowledgeable and binding answers on behalf of the corporation" (footnote omitted) (quoting *Marker,* 125 F.R.D. at 126)).

We believe that these cases properly interpret Rule 30(b)(6) and we adopt their rationale in concluding that the rule should be applied similarly in Colorado. Nothing in the rule or its interpretation suggests to us that persons who are designated and testify under Rule 30(b)(6) will not bind their corporate principal. And nothing in the rule precludes a principal from offering contrary or clarifying evidence where its designee has made an error or has no knowledge of a matter. D.R. Horton cites no authority, and we have found none, to the contrary.

Here, D.R. Horton produced a witness who did not have knowledge about the matters relating to the claims, but who identified former employees with the knowledge. Based upon the record, it appears that those former employees' whereabouts were known to D.R. Horton and that D.R. Horton intended to call some or all of them at trial. Nothing in the record indicates that any of these witnesses would not "consent to testify on its behalf." *See* C.R.C.P. 30(b)(6). When asked whether D.R. Horton intended to designate "any other witness as a [C.R.C.P.] 30(b)(6) representative," counsel responded as follows:

At this time, I do not anticipate that our firm intends to produce any other witness as a [C.R.C.P.] 30(b)(6) representative of D.R. Horton. Ms. Hogue, during her de-

position, identified the individuals, no longer employed by D.R. Horton, who would be the ones to testify regarding the topics listed in the [C.R.C.P.] 30(b)(6) notice. These individuals include, but are not limited to, [four individuals named]. I anticipate that [the HOA] will depose some or all of these people as fact witnesses. If this case proceeds to trial, we will likely call some or all of them as fact witnesses.

It appears that these witnesses were available to D.R. Horton and could have been designated under C.R.C.P. 30(b)(6) or used to inform the witness who was designated. But even if they were not available, D.R. Horton failed to seek a protective order and did not depose or (apparently) interview them. Instead, it proceeded with the deposition of an unprepared designee who lacked knowledge of the matters at issue.

D.R. Horton's conduct helps to explain why we now reject its contention that the district court erred by relying on the C.R.C.P. 30(b)(6) designee's testimony. We perceive no error because (1) the testimony was sworn, (2) the district court may rely upon sworn deposition testimony under the express provisions of C.R.C.P. 56(e), and (3) D.R. Horton did not oppose the testimony with any specific contrary facts in the form prescribed by C.R.C.P. 56(e).

### IV. Use of C.R.C.P. 30(b)(6) Testimony

D.R. Horton contends that the subcontractors cannot use the C.R.C.P. 30(b)(6) designee's testimony to show that no facts support any of the claims against them and that therefore, as a matter of law, they should prevail. We perceive this as an argument that the subcontractors did not meet their initial burden because, somehow, the C.R.C.P. 30(b)(6) testimony by D.R. Horton's designee has no operative effect. D.R. Horton relies upon two central arguments to contend that the deposition of its designee should not be used by the subcontractors. We reject each in turn.

First, D.R. Horton contends that "if an organization does not possess the knowledge to prepare a C.R.C.P. 30(b)(6) deponent to testify about a given subject, its obligations under the rule cease." It reasons that it explained in advance that the witness had no knowledge. Therefore, the testimony of its designee should not be used against it by aiding the subcontractors' initial burden under Rule 56. We perceive this argument to be, at bottom, an assertion that the person designated was not a proper designee and because the designee lacked knowledge, D.R. Horton had no further obligation under C.R.C.P. 30(b)(6), thereby excusing it from providing a knowledgeable witness.

In support of this proposition, D.R. Horton cites *Dravo Corp.* and *Barron v. Caterpillar, Inc.*, 168 F.R.D. 175 (E.D.Pa.1996). These cases are of no help to D.R. Horton. It is true that *Dravo Corp.* can be cited for the proposition that a company is under no obligation to prepare a designee if the company lacks knowledge regarding a matter because C.R.C.P. 30(b)(6) requires testimony only as to matters known or reasonably available. *Dravo Corp.*, 164 F.R.D. at 75. However, *Dravo Corp.* also recognized that "[i]f no current employee has sufficient knowledge to provide the requested information, the party is obligated to 'prepare [one or more witnesses] so that they may give complete, knowledgeable and binding answers on behalf of the corporation.' " *Id.* (quoting *Marker*, 125 F.R.D. at 126). D.R. Horton never suggested in its briefs to the court in response to the motions for summary judgment that although its designee lacked knowledge, it also had no reasonable ability to access information concerning its claims.

The corporation lacked such ability to access information in *Barron*, the second case cited by D.R. Horton to support its position. There, the corporation responsible for designating a deponent lacked any meaningful knowledge regarding a machine that had been manufactured over twenty-five years ago, and it had no access to anyone with current knowledge about the machine. *See Barron*, 168 F.R.D. at 177.

Of course neither of these cases stands for the proposition that the testimony of an unprepared designee cannot be used. *See* C.R.C.P. 32(a)(2) (the deposition of a person designated under C.R.C.P. 30(b)(6) may be used by an adverse party for *any purpose* ).

In fact, *Barron* illustrates that a corporation should be excused from sanctions and granted a protective order where it had no means available to prepare a C.R.C.P. 30(b)(6) designee. Here, D.R. Horton did not seek a protective order or otherwise contend that it had no means available to prepare an appropriate witness.

Second, D.R. Horton argues that C.R.C.P. 30(b)(6) operates to except the use of its designee's deposition testimony because such testimony "is not a judicial admission absolutely binding on that party." We agree that such testimony does not rise to the level of a judicial admission, but that does not mean that such testimony must be excluded or that it is not competent for use in a C.R.C.P. 56 motion. In fact, the authority cited by D.R. Horton to support its argument acknowledges that the testimony of the designee is nevertheless admissible against the party that designates the representative. *See* 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2103 (2d ed. 1987 & Supp.2008). Nothing apparent from the record prevented D.R. Horton from offering evidence by way of affidavit or document to contradict the testimony given by its designee or to provide factual detail to support its claims against the subcontractors.

Instead, D.R. Horton's response in opposition to the motions for summary judgment relied upon unsworn expert reports which it had attached to prior pleadings with the court. It offered no opposing affidavit from any of the witnesses identified by its designee or from any of its corporate officers.

We decline to accept D.R. Horton's invitation to reject the rule announced in *McDaniels*. There, relying upon substantial authority, the division concluded that unsworn expert reports cannot be relied upon to support or oppose a motion for summary judgment.

Here, in support of its opposition to the motions, D.R. Horton pointed to unsworn expert reports, C.R.C.P. 26 disclosures, allegations in the pleadings, and arguments of counsel made in its prior motion for summary judgment as raising material issues for trial. These items, lacking verification, are not competent under C.R.C.P. 56 to dispel the initial showing by the subcontractors that there were no facts to support the allegations of D.R. Horton's claims.

In contrast, the subcontractors supported their motions with:

- Sworn testimony of one expert opining that there was no damage caused by excavation of the foundations;
- Sworn testimony that J & K was not responsible for the subgrade;
- Sworn testimony of an expert stating that he did not intend to offer at trial an opinion regarding the subcontractors' compliance and that he had no knowledge of the type of stones required or placed by the subcontractors; and
- Sworn testimony of D.R. Horton's Rule 30(b)(6) designee.

Together, these statements satisfied the subcontractors' initial burden of showing that there were no facts to support the claims of breach of contract, breach of express warranty, contractual indemnity, contribution, or negligence. Accordingly, the trial court properly granted summary judgment for the subcontractors.

## V. Contractual Indemnity

D.R. Horton argues that even if it was required to offer facts to support its negligence claims, nevertheless, the district court erred in dismissing its contractual indemnity claim. It contends that the subcontract agreements are not disputed and they require the subcontractors to defend and indemnify it against "any and all claims ... of every kind and character ... in any way occurring, incident to, arising out of, or in connection with" a breach of the warranties and covenants provided by the subcontractors, work performed or to be performed by the subcontractors, or any negligent action or omission of D.R. Horton related in any way to the work.

We read the contracts to require in each instance that the contractual indemnity be based upon the work performed by the subcontractors and, in light of the testimony of the C.R.C.P. 30(b)(6) designee, there are no

facts to support a claim that the subcontractors' work was negligent or defective.

■ The subcontracts included indemnity provisions that required J & K and D & S

to protect, defend, indemnify and hold [D.R.] Horton ... free and harmless from and against any and all claims, demands, causes of actions, suits or other litigation (including all costs thereof and attorneys' fees) of every kind and character ... in any way occurring, incident to, arising out of, or in connection with, (I) a breach of the warranties and covenants provided herein by contractor; (II) the work performed or to be performed by contractor or contractor's personnel, agents, suppliers or permitted subcontractors; or (III) any negligent action and/or omission of the indemnitee related in any way to the work, even when the loss is caused by the fault or negligence of the indemnitee.

■ An indemnity provision "should be enforced according to the plain and generally accepted meaning of its language and interpreted in its entirety to give effect to all of its provisions so that none [is] rendered meaningless." *Mid Century Ins. Co. v. Gates Rubber Co.*, 43 P.3d 737, 739 (Colo. App.2002).

The indemnification provision requires indemnity where the subcontractors have provided defective work or where the indemnitee's own negligent acts relate to that defective work. There is an utter absence of facts to support the claim that the subcontractors' work was defective. D.R. Horton offered no factual support that the subcontractors breached warranties or covenants, that their work was defective, or that any negligence of D.R. Horton related to the work. Even if, as D.R. Horton seems to suggest, the indemnity provisions require the subcontractors to indemnify D.R. Horton for its own negligence, notwithstanding the scope of the subcontractors' work, there is no factual support in D.R. Horton's response which identifies its own negligent acts. Thus, summary judgment was appropriate on the contractual indemnity claim as well.

## VI. Expert Opinion Regarding Negligence

D.R. Horton next argues that the district court erred by concluding, as an alternative finding, that "plaintiff had offered no expert testimony attesting to defendants' negligence." In D.R. Horton's view, this conclusion suggested that affidavits of experts concerning the standard of care of the subcontractors were appropriate and necessary. We perceive no error for two reasons.

■ First, the trial court focused not only on the absence of a factual response, but also on the lack of evidence of any fault on the part of these subcontractors. Second, because we adopt the reasoning of *McDaniels*, we consider it fatal to D.R. Horton's appeal that it offered no sworn expert reports to oppose the subcontractors' motions. Had D.R. Horton submitted affidavits of experts which delineated the negligence of the subcontractors, it would have satisfied, or would have come closer to satisfying, its burden.

## VII. Contribution

■ Finally, we note that D.R. Horton filed a contribution claim, which, on the surface, does not appear to lend itself to a determination by summary judgment before any liability has been assessed against D.R. Horton. A person has a right to contribution from another person that is jointly or severally liable in tort for the same injury to a person or property. *See* § 13–50.5–102(1), C.R.S.2007 ("where two or more persons become jointly or severally liable in tort for the same injury to person or property ... there is a right of contribution among them even though judgment has not been recovered against all or any of them"). "A claim for contribution is an action separate and distinct from the underlying tort. The rights and obligations of the tortfeasors flow, not from the tort, but from the judgment or settlement itself." *Coniaris v. Vail Assocs., Inc.*, 196 Colo. 392, 395, 586 P.2d 224, 225 (1978). A cause of action on a claim for contribution does not accrue until settlement of or entry of judgment on the underlying tort claim. *See id.; Kelly v. Mid–Century Ins. Co.*, 695 P.2d 752, 754 (Colo.App.1984).

Here, the HOA's claims against D.R. Horton had not yet been settled or reduced to a judgment at the time the district court entered summary judgment. Absent some basis for finding the subcontractors liable, they had no contribution obligation. In light of the summary judgments releasing the subcontractors from liability, either the claim for contribution is now moot, or it necessarily falls with the rest.

We are satisfied that, as the district court found, the subcontractors met their initial burden of showing the lack of a genuine issue of material fact with respect to their alleged liability, and that D.R. Horton failed to respond with facts sufficient to demonstrate the existence of a genuine issue for trial. *See Cont'l Air Lines*, 731 P.2d at 713. Thus, the district court properly granted summary judgment on the contribution claim.

The judgments are affirmed.

Judge VOGT and Judge LICHTENSTEIN concur.