24CA1795 Peo in Interest of AMI 07-24-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1795
City and County of Denver Juvenile Court No. 23JV30162
Honorable Laurie A. Clark, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of A.M.I. and M.M.I., Children,

and Concerning F.M.A.N.,

Appellant.

---

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE PAWAR
Lipinsky and Lum, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 24, 2025

---

Katie McLouglin, Acting City Attorney, Christina R. Kinsella, Assistant City Attorney, Denver, Colorado, for Appellee

Debra W. Dodd, Guardian Ad Litem

Elizabeth A. McClintock, Office of Respondent Parent's Counsel, Colorado Springs, Colorado, for Appellant

¶ 1    In this dependency and neglect proceeding, F.M.A.N. (mother) appeals the juvenile court's order revoking her deferred adjudication and adjudicating A.M.I. and M.M.I. (the children) dependent or neglected.  We conclude that the Denver Department of Human Services did not meet its burden to show that mother failed to sufficiently comply with the terms of her deferred adjudication agreement.  Accordingly, we reverse and remand with directions.

## I.    Background

¶ 2    In January 2023, the Department received a referral concerning the then-seven and five-year-old children, who were living with mother at a homeless shelter.  The Department opened an assessment to work with the family on a voluntary basis because the shelter's staff members were concerned about possible medical and educational neglect, as well as a lack of supervision.

¶ 3    Two months later, after mother was arrested for refusing to leave the shelter, the Department obtained an oral order for temporary legal custody of the children and placed them with their maternal grandparents.

1

¶ 4	The Department then filed a petition in dependency and neglect. In addition to its concerns about possible neglect while the family was living at the homeless shelter, the Department alleged that mother was previously involved with the Department and had a history of mental health issues.

¶ 5	In July 2023, mother admitted paragraph 5(e) of the petition, in which the Department alleged that the children were homeless, without proper care, or not domiciled with their parent, guardian, or legal custodian through no fault of mother. The parties entered into an agreement (the deferred adjudication agreement) to defer the adjudication for at least six months as long as mother complied with several specified terms, including completing a psychological evaluation, obtaining stable housing, mitigating the Department's safety concerns, and understanding the children's needs.

¶ 6	Four months later, mother filed a motion to return the children home, asserting that she had complied with the terms of the deferred adjudication agreement and that she was a fit parent. The juvenile court set a hearing on mother's motion but continued it at mother's request. In the meantime, the Department filed a motion to revoke the deferred adjudication on the grounds that

mother had failed to sufficiently comply with the deferred adjudication agreement.

¶ 7 In April 2024, the juvenile court began a contested hearing regarding the "return home [motion] and the revocation of the deferred [adjudication]." The hearing lasted seven days over four months. After hearing the evidence, the court entered an oral order granting the Department's motion to revoke the deferred adjudication and denying mother's motion to return the children home. The court later issued a written adjudicatory and dispositional order.

## II. Discussion

¶ 8 Mother contends that the juvenile court erred by misapplying the law governing deferred adjudications. Specifically, she argues that the Department did not meet its burden to show that she failed to sufficiently comply with the terms of her deferred adjudication agreement, and thus, the court's findings were unsupported by the record. She also argues that the court failed to follow *People in Interest of N.G.*, 2012 COA 131, which requires a court to reconsider the status of the children — i.e., whether they are dependent or neglected — before revoking a deferred adjudication. Finally,

mother argues that the juvenile court misapplied *N.G.* because it did not make any findings about whether her *Troxel* presumption — the presumption that she was acting in the children's best interests — had been overcome. *See Troxel v. Granville*, 530 U.S. 57, 66 (2000).

¶ 9 We agree with mother that the court's findings that mother did not sufficiently comply with the deferred adjudication agreement lacked record support and we therefore reverse the adjudication. Because we reverse on this basis, we do not address mother's other arguments.

### A. Legal Authority and Standard of Review

¶ 10 In dependency and neglect proceedings, an adjudication represents the juvenile court's determination that state intervention is necessary to protect a child and that the family requires rehabilitative services to safely care for the child. *People in Interest of J.G.*, 2016 CO 39, ¶ 16. Typically, before adjudicating a child dependent or neglected, the court must hold a hearing at which the department is required to prove the allegations in the petition by a preponderance of the evidence. *Id.*; *see also* § 19-3-505, C.R.S. 2024. Alternatively, the court may accept a parent's admission at

an adjudicatory hearing. *People in Interest of J.W. v. C.O.*, 2017 CO 105, ¶ 32. The "court's acceptance of [a parent's] admission establishe[s] the status of the children as dependent or neglected." *Id.*

¶ 11 When a parent admits that a child is dependent or neglected, the parent may defer adjudication by continuing the adjudicatory hearing. Section 19-3-505(5), provides the process for doing so. Specifically, when a parent admits the children are dependent or neglected, a deferred adjudication allows a juvenile court, with all parties' consent, to continue the adjudicatory hearing for six months and to defer entry of judgment. § 19-3-505(5)(a)-(b). Following the initial six-month period, the juvenile court may continue the hearing for another six months, after which the court must dismiss or sustain the petition. § 19-3-505(5)(b).

¶ 12 Whether a child is dependent or neglected presents a mixed question of fact and law because it requires the application of the statutory criteria to evidentiary facts. *See People in Interest of E.R.*, 2018 COA 58, ¶ 5. We review the court's factual findings for clear error but review de novo its legal conclusions based on those facts. *People in Interest of A.S.L.*, 2022 COA 146, ¶ 8.

### B. The Department Did Not Prove That Mother Failed to Sufficiently Comply with the Deferred Adjudication Agreement

¶ 13    Consistent with the deferred adjudication agreement, mother was entitled to an "evidentiary hearing [on] whether or not [she had] sufficiently complied with the terms of this deferred adjudication." At the hearing, the Department bore the burden to prove, by a preponderance of the evidence, that mother failed to sufficiently comply with the terms of the deferred adjudication agreement. *See Atl. & Pac. Ins. Co. v. Barnes*, 666 P.2d 163, 165 (Colo. App. 1983) (the burden of proof rests "upon the party who asserts the affirmative of an issue" or "the party seeking to change the status quo"); *see also J.G.*, ¶ 16, (the burden of proof for adjudicating a child dependent or neglected is by a preponderance of the evidence).

¶ 14    The Department moved to revoke the deferred adjudication agreement based on mother's alleged noncompliance with three of its terms. In its initial motion to revoke, the Department alleged that mother failed to comply with the term requiring her to complete a full psychological exam. Then, during the pendency of the hearing, the Department filed two amended motions alleging that mother failed to comply with the terms requiring her to "maintain

stable housing, adequate for herself and her children" and "sufficiently mitigate" safety concerns so that the children could be returned to her custody within ten months of the adoption of the agreement.

¶ 15   At the evidentiary hearing, the Department was thus required to prove that, during the deferral period, mother did not (1) complete the psychological evaluation; (2) obtain stable housing; or (3) sufficiently mitigate the Department's safety concerns.

### 1. Term Requiring Mother to Complete a Psychological Evaluation

¶ 16   At the conclusion of the evidentiary hearing, the juvenile court found that mother was "compliant with the psychological evaluation and following through with those recommendations [and] that she has engaged in mental health [treatment]." That finding was supported by the record. Specifically, the evidence established that although the Department's approved provider rescheduled mother's appointment at least twice, she completed a psychological evaluation, albeit with a different provider, in February 2024.

¶ 17   We reject the Department and guardian ad litem's (GAL) argument that we should affirm the revocation based on mother's

failure to comply with the psychological evaluation term because the juvenile court "could have found" such noncompliance. We do not reweigh the evidence or substitute our judgment for that of the juvenile court. *People in Interest of K.L.W.*, 2021 COA 56, ¶ 62; *see also In re Parental Responsibilities Concerning B.R.D.*, 2012 COA 63, ¶ 15 (when there is record support for the court's findings, its resolution of conflicting evidence is binding on review).

¶ 18    Because the juvenile court's finding that mother complied with the psychological evaluation term has record support, we cannot conclude that revocation of the deferred adjudication was warranted based on a violation of that term.

### 2.    Term Requiring Mother to Obtain Stable Housing

¶ 19    Although the Department moved to revoke the deferred adjudication based on mother's alleged failure to secure stable housing, the juvenile court did not specifically address this term in its oral ruling or findings. Rather, after making findings about mother's compliance with certain terms of the agreement, the court stated that it "didn't get enough information" to make findings or

conclusions about the other terms.[1]  Thus, despite some evidence indicating that an eviction proceeding was pending against mother during the deferral period, we defer to the court's determination that the Department failed to provide enough evidence to show whether mother complied with the housing term or not.  *See People in Interest of A.J.L.*, 243 P.3d 244, 249-50 (Colo. 2010) (it is for the juvenile court, as the trier of fact, to determine the sufficiency, probative effect, and weight of the evidence).  Accordingly, we cannot conclude that revocation of the deferred adjudication was warranted based on mother's failure to sufficiently comply with the housing term.

### 3.    Term Requiring Mother to Mitigate Safety Concerns

¶ 20    Next, in support of its order revoking mother's deferred adjudication, the juvenile court found that mother failed to

---

[1] The juvenile court specifically addressed mother's compliance with the terms requiring her to (1) complete a psychological evaluation; (2) abstain from leaving the state of Colorado with the children; (3) obtain employment or another legal source of income; (4) complete Department-approved parental education; (5) consistently attend family time; (6) cooperate with the Department and the GAL; (7) understand the children's physical, emotional, and mental health needs; and (8) sufficiently mitigate safety concerns to return the children to her within ten months of the deferred adjudication agreement.

sufficiently mitigate safety concerns in a manner that would allow the Department to safely return the children to her. However, the court did not explain what those remaining safety concerns were, nor did it credit specific testimony or evidence showing that mother had not mitigated those concerns. In other words, the court made no findings in support of its determination regarding the Department's safety concerns.

¶ 21 In its closing argument, the Department argued that "the safety concerns are the exact same" as outlined in the petition. But our review of the record reveals that the Department did not present any evidence to show that the safety concerns described in the petition still existed during the deferral period. *See Robertson v People*, 2017 COA 143M, ¶ 35 (arguments of counsel are not evidence). And although mother had also filed a motion seeking return of her children, that did not excuse the Department from proving, as grounds for revoking the deferred adjudication, that mother failed to substantially comply with certain terms of the deferred adjudication agreement as alleged in its motions. The Department's burden necessarily included proving its safety concerns. To the contrary, numerous witnesses, including a

visitation supervisor called to testify by the Department, stated they had no safety concerns about mother's ability to parent the children.

¶ 22    Notably, the Department did not call the caseworker assigned to this case to testify about the safety concerns during the deferral period and the ways in which mother either addressed or failed to mitigate those concerns. Rather, the Department and the GAL point us to a previously assigned caseworker's testimony as record support for the court's finding that safety concerns remained at the time of revocation. But that caseworker admitted she had worked with the family years earlier (between 2020 and 2021) and did not have a "picture of what things look like today." Thus, her testimony could not establish that there were remaining safety concerns at the time of the hearing.

¶ 23    Additionally, the Department and the GAL point to a visitation supervisor's testimony as record support for the juvenile court's finding that mother failed to mitigate the safety concerns. Although that visitation supervisor testified months earlier and in connection with the Department's motion to change the location of family time, not the Department's motion to revoke the deferred adjudication,

the court stated that it would consider the testimony as to both motions. But the safety concerns about which the visitation supervisor testified were based on three family time sessions that occurred five months before the court revoked mother's deferred adjudication. The supervisor expressed concerns about mother's ability to discipline the children, set boundaries, and keep the children safe around her dog. But even assuming this testimony established the Department's safety concerns, it did not establish that mother failed to mitigate those concerns within ten months of entering into the deferred adjudication agreement.

¶ 24     In sum, the juvenile court did not credit or point to any evidence to support its determination that that mother failed to mitigate any safety concerns during the deferral period. Neither the Department nor the GAL direct us to any supporting evidence, and our review of the record does not reveal any such evidence.

¶ 25     Because it lacks record support, the court's finding that mother failed to mitigate the Department's safety concerns by the time of revocation was clearly erroneous. *See In re Parental Responsibilities of S.Z.S.*, 2022 COA 105, ¶ 11. Accordingly, we cannot conclude that revocation of the deferred adjudication was

warranted based on mother's failure to comply with the term requiring her to sufficiently mitigate safety concerns.

### 4. Term Requiring Mother to Understand the Children's Needs

¶ 26     Last, the juvenile court found that mother did "not understand the physical, emotional, or mental health needs of the children" and noted that understanding the children's needs was a term of the deferred adjudication agreement. Again, we conclude that the record did not support this finding because the Department failed to present evidence establishing the children's needs or how mother did not understand them.

¶ 27     We note that the Department never moved to revoke the deferred adjudication based on mother's alleged failure to understand the physical, emotional, or mental health needs of the children. Although we question whether mother received notice that the court might revoke on this deferred agreement term, mother does not argue on appeal that revocation based on this term constituted a due process violation, so we do not consider it. Nonetheless, the fact that the Department never cited this term when it moved for revocation sheds some light on what we perceive

as the Department's failure to present any evidence related to this term.

¶ 28     In any event, as noted above, we would defer to the court's finding that mother did not understand the children's needs if it was supported by the record. *See People in Interest of S.R.N.J-S.,* 2020 COA 12, ¶ 10.  But in its oral ruling, the juvenile court did not explain what it found to be the children's needs, nor did it credit any evidence establishing what they were or how mother did not understand them.

¶ 29     We acknowledge that the court found mother's psychiatrist's testimony to be credible.  But the psychiatrist did not testify about the children's needs, nor did she testify that mother did not understand them.  Rather, she testified that, while issues dealing with parenting were "outside of [her] scope," mother's mental health diagnosis did not create a barrier to her parenting.

¶ 30     We also acknowledge the court's finding that mother's psychological evaluation was insufficient and lacked helpful recommendations.  To that end, the Department and the GAL assert that "the deficiencies of the psychological evaluation contributed to the court's concerns about mother's ability to understand the

children's physical, emotional, or mental health needs." However, to support this argument, they point to testimony provided by a psychologist who neither evaluated mother nor directly worked with the family. Thus, although that expert opined that mother's psychological evaluation was insufficient to establish whether she had mental health issues, the expert could not explain anything about the children's needs or mother's ability to understand them.

¶ 31    Moreover, the Department and the GAL assert that mother's own testimony supported the juvenile court's finding that she did not understand her children's needs. Specifically, they point to her testimony about whether she would allow the children to continue therapy with their current provider or stay at their current school if they were returned to her. True, mother did not give definitive answers when asked, hypothetically, whether she would allow the children to continue therapy with their current provider or stay at the same school if they were returned to her care. However, the Department did not present any evidence to establish that the children needed to continue therapy with their current provider or that they needed to stay in their current school. Thus, this

15

testimony was not dispositive of whether mother understood the children's needs.

¶ 32    The Department and the GAL also point to testimony from hearings in July 2023 and January 2024, as well as a caseworker's court report from January 2023, to support their contention that mother would not consent to the children's therapy. But this testimony and court report were not offered as evidence during the revocation hearing, and thus, we will not consider them. *See Boulder Plaza Residential, LLC v. Summit Flooring, LLC*, 198 P.3d 1217, 1222 (Colo. App. 2008) (recognizing that an appellate court will not consider evidence that a party failed to introduce at trial).

¶ 33    Finally, the Department and the GAL assert that the evidence established that mother did not understand the younger child's medical needs; specifically, that mother did not understand that the child did not have foot pain or an injury, as mother believed. Indeed, mother testified that when the Department became involved with the family, the child had severe foot pain that required her to repeatedly take him to urgent care and carry him everywhere. And she admitted that after child was placed with maternal

16

grandparents, she had witnessed him "walking around" even though he still asked her to carry him. However, the Department did not present any evidence to establish that mother's concerns about the child's foot were unwarranted, thereby showing that she did not understand his needs. For example, the Department did not call anyone familiar with the child or the true nature of the injury, such as maternal grandmother or the child's doctor, to testify. And without any evidence showing that mother's concerns about the child's foot were unwarranted, the testimony about the alleged injury could not support a finding that mother did not understand his medical needs.

¶ 34 The Department and the GAL also point to the caseworker's court report from September 2024 to support their assertion that the child "no longer had issues with his feet" after he was placed with maternal grandparents. But this court report was not admitted into evidence at the revocation hearing; rather, it was only filed *after* the hearing had concluded. Moreover, the Department did not call the caseworker who wrote the report to testify at the revocation hearing. Thus, we will not consider it. *See id.*

¶ 35    In sum, the juvenile court did not credit any evidence to support its finding that mother did not understand the children's needs.  Neither the Department nor the GAL directs us to any evidence establishing the children's needs and how mother failed to understand them.  And our review of the record does not reveal any such evidence.  Thus, because the court's finding that mother did not understand the children's needs lacked record support, it was clearly erroneous.  *See S.Z.S.*, ¶ 11.  Accordingly, we cannot conclude that revocation of the deferred adjudication was warranted based on mother's failure to comply with the term requiring her to understand the children's needs.

C.    The Juvenile Court Was Required to Dismiss the Petition

¶ 36    Based on the foregoing, we hold that the court's order revoking mother's deferred adjudication and entering the adjudicatory judgment must be reversed.  It follows that the subsequent dispositional order requires reversal as well.

¶ 37    On remand, the juvenile court must dismiss the petition.  Under section 19-3-505(5)(b), the juvenile court "shall" either dismiss or sustain the petition after the second six-month deferral period has passed.  Both six-month deferral periods had passed by

18

the time the court revoked the deferred adjudication and entered judgment. Thus, the court had only two options at the end of the revocation hearing — to dismiss or sustain the petition.

¶ 38 Based on our conclusion above, the court's only option was to dismiss the Department's petition in dependency and neglect.

## III. Disposition

¶ 39 The adjudicatory judgment and dispositional order are reversed. On remand, the juvenile court shall dismiss the Department's petition in dependency and neglect.[2]

JUDGE LIPINSKY and JUDGE LUM concur.

---

[2] Nothing in this disposition precludes the Department from filing a new petition in dependency and neglect if circumstances warrant.